**STATE of Utah, Plaintiff and Respondent,**

v.

**Richard C. BAIRD, Defendant and Appellant.**

**No. 870259–CA.**

Court of Appeals of Utah.

Nov. 1, 1988.

---

Jimi Mitsunaga (argued), Salt Lake City, for defendant and appellant.

David L. Wilkinson, State Atty. Gen., Dan R. Larsen, Asst. Atty. Gen. (argued), for plaintiff and respondent.

Before GARFF, DAVIDSON and ORME, JJ.

## OPINION

DAVIDSON, Judge:

Defendant appeals from a conviction of unlawful possession of a controlled substance and seeks reversal of the denial of his motion to suppress and reversal of his conviction.

## FACTS

On February 9, 1987, Paul Mangelson, a sergeant with the Utah Highway Patrol, was parked in the Interstate 15 median beneath an overpass near Mona, Juab County. He was checking the speed of cars with a radar unit and observing inspection stickers and registrations.

At approximately 3:45 p.m., Mangelson observed a "nice looking," late model Cadillac approaching at 56 mph. The car had Arizona license plates front and rear, however the sticker on the rear license plate "didn't appear to be valid." He later testified, "something just struck me funny about it." Mangelson was unaware of Arizona's color scheme for determining sticker validity. In spite of that, he followed the car for about a mile and determined the sticker was valid through December but was unable to determine if the pertinent year was 1986 or 1987. He stopped the car to determine the sticker's validity.

After making the stop and while approaching the car, Mangelson saw the numbers 87 in the lower right corner indicating the sticker was valid. He also observed new tires and new air shocks on the car. Closer inspection revealed a jack and a lug wrench on the rear floor and a locking gas cap, which "appeared to be twisted off," on the back seat. Two keys were on the ignition key ring but there appeared to be no gas cap key.

Upon request, defendant produced a Utah driver's license and an Arizona registration. When asked about the individual in whose name the Cadillac was registered, defendant stated she was a woman he had "met in Phoenix over the weekend" and that he had borrowed the car after his had been wrecked in Arizona. Defendant was not certain about the owner's address, her telephone number, or where his own wrecked car was located. During the time he was speaking with defendant, Mangelson noticed the odor of marijuana. Defendant refused permission to search the car.

Mangelson returned to his patrol car and radioed a request for computer checks. Those checks revealed that the Cadillac had

not been reported stolen, but they did reveal that defendant's drivers license had been suspended. Defendant was arrested and the car towed to Nephi. Mangelson, without the consent of defendant, took the car keys, and with the County Sheriff and the County Attorney, conducted an inventory search of the car. The locked trunk was opened and 165 lbs of marijuana found therein.

A hearing on defendant's motion to suppress the evidence was held, following which the motion was denied. A bench trial was held on May 20, 1987. Defendant was found guilty. This appeal followed.

### ISSUES

Two issues are presented on appeal. First, was there reasonable, articulable suspicion to justify an investigative stop of defendant's car? Second, did the warrantless inventory search of defendant's car violate his right against unreasonable searches?

### INVESTIGATIVE STOP

■ There are three levels of police-citizen encounters requiring different degrees of justification to be constitutionally permissible. The Utah Supreme Court has listed these as follows:

(1) [A]n officer may approach a citizen at anytime [sic] and pose questions so long as the citizen is not detained against his will;

(2) an officer may seize a person if the officer has an "articulable suspicion" that the person has committed or is about to commit a crime; however, the "detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop;"

(3) an officer may arrest a suspect if the officer has probable cause to believe an offense has been committed or is being committed.

*State v. Deitman*, 739 P.2d 616, 617–18 (Utah 1987) (quoting *United States v. Merritt*, 736 F.2d 223, 230 (5th Cir.1984)) (citation omitted).

Any time a police officer stops an automobile the stop necessarily involves detention and therefore is a level two encounter requiring reasonable, articulable suspicion, *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); *United States v. Brignoni–Ponce*, 422 U.S. 873, 880, 95 S.Ct. 2574, 2579, 45 L.Ed.2d 607 (1975). Absent reasonable suspicion, evidence derived from the stop is "fruit of the poisonous tree," *Wong Sun v. United States*, 371 U.S. 471, 484, 83 S.Ct. 407, 415, 9 L.Ed.2d 441 (1963), *Nardone v. United States*, 308 U.S. 338, 341, 60 S.Ct. 266, 267, 84 L.Ed. 307 (1939), and must be excluded. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967); *Wolf v. Colorado*, 338 U.S. 25, 28, 69 S.Ct. 1359, 1361, 93 L.Ed. 1782 (1949).

Since reasonable suspicion depends on the "totality of the circumstances," *State v. Sierra*, 754 P.2d 972, 977 (Utah App. 1988) (citing *Brignoni–Ponce*, 442 U.S. at 885 n. 10, 95 S.Ct. at 2582 n. 10), a bright line delineating what is or is not reasonable cannot be drawn. Guidance can be found, however, in a review of cases. The "reasonable suspicion" standard has been applied in Utah courts in *State v. Mendoza*, 748 P.2d 181 (Utah 1987) (Mexican appearance, California plates, route, time, "erratic" driving with police car tailing two to six feet behind, and nervous behavior after stop insufficient for reasonable suspicion); *State v. Constantino*, 732 P.2d 125 (Utah 1987) (officer had reasonable suspicion to stop auto because officer knew of revoked license and outstanding arrest warrant); *State v. Carpena*, 714 P.2d 674, 675 (Utah 1986) (officer lacked reasonable suspicion to stop auto with out-of-state plates moving slowly at 3:00 a.m. through neighborhood where rash of burglaries had recently occurred), and *State v. Swanigan*, 699 P.2d 718 (Utah 1985) (description of two men seen in area by another officer two hours previously insufficient to give officer reasonable suspicion to stop two men walking at 1:40 a.m. three blocks from burglary); *see also State v. Trujillo*, 739 P.2d 85 (Utah App.1987). This court recently found in *Sierra*, that an officer did not have reasonable suspicion to stop Sierra based solely on New York plates, Sierra's "suspicious nature and the way [Sierra] reacted when he [saw] me." Instead the stop was just a pretext to discover evidence

of illegal activity to support his "hunch." 754 P.2d 972.

 In the instant case the officer articulated "something just struck me funny about it" referring to the license plate sticker. Alone this does not approach reasonable and articulable suspicion.[1] The State attempted to justify the stop by the after-discovered evidence of new tires and shocks, a twisted-off gas cap, the jack in the back seat, the defendant's confusion about ownership of the car, and the smell of marijuana. While this may have justified a further inquiry of the driver after a valid stop, such articulable suspicion must be present at the time of the stop and must be the reason for the stop. In this case, no reasonable or articulable suspicion existed to justify the stop. The evidence used to convict defendant was derived by exploitation of the impermissible stop. None of the exceptions to the exclusionary rule apply;[2] the evidence should have been suppressed.

## INVENTORY SEARCH

Since this case must be reversed on the grounds previously stated, we do not reach defendant's second claim of error, that the warrantless inventory search violated his right against unreasonable searches.

Defendant's conviction is reversed.

GARFF and ORME, JJ., concur.

---

1. If this is sufficient reason to stop, every out-of-state vehicle may be stopped for no reason other than the officer's ignorance of the license plate sticker color code.

2. *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920) (independent source); *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925) (exigencies); *Nardone v. United States,* 308 U.S. 338, 341, 60 S.Ct. 266, 267, 84 L.Ed. 307 (1939) (attenuation); *Brinegar v. United States,* 338 U.S. 160, 164, 69 S.Ct. 1302, 1305, 93 L.Ed. 1879 (1949) (probable cause search); *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1969) (weapon frisk); *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) (incident to arrest); *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976) (inventory); *United States v. Mendenhall,* 446 U.S. 544, 557, 100 S.Ct. 1870, 1878, 64 L.Ed.2d 497 (1980) (consent); *Texas v. Brown,* 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (plain view); *Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984) (inevitable discovery); *United States v. Brignoni–Ponce,* 422 U.S. 873, 881, 95 S.Ct. 2574, 2580, 45 L.Ed.2d 607 (1975) (reasonable suspicion seizure); *see also Katz v. United States,* 389 U.S. 347, 357 n. 19, 88 S.Ct. 507, 514 n. 19, 19 L.Ed.2d 576 (1967); *Vale v. Louisiana,* 399 U.S. 30, 35, 90 S.Ct. 1969, 1972, 26 L.Ed.2d 409 (1970).