STATE of Utah, Plaintiff and Appellant,

v.

Gerard Cotero J. LOPEZ, Defendant
and Appellee.

No. 900484–CA.

Court of Appeals of Utah.

May 5, 1992.

R. Paul Van Dam and David B. Thompson, Salt Lake City, for plaintiff and appellant.

James A. Valdez and Elizabeth Holbrook, Salt Lake City, for defendant and appellee.

Before BILLINGS, ORME and RUSSON, JJ.

## AMENDED OPINION UPON REHEARING [1]

BILLINGS, Associate Presiding Judge:

The State of Utah filed this interlocutory appeal from an order granting defendant Gerard Lopez's motion to suppress evidence obtained as a result of a police traffic stop and subsequent inventory search of defendant's vehicle. On appeal, the State argues the trial court erred in: (1) Determining the police officer did not have a reasonable suspicion to believe the driver was driving without a license, and (2) determining the stop was a pretext stop. We reverse and remand.

### I. FACTS

The question of whether a warrantless police traffic stop violates the Fourth Amendment of the United States Constitution is particularly fact sensitive and, thus, we review the underlying facts of this case in detail. *State v. Smith*, 781 P.2d 879, 880 (Utah App.1989); *State v. Sierra*, 754 P.2d 972, 973 (Utah App.1988), *rev'd on other grounds, State v. Arroyo*, 796 P.2d 684 (Utah 1990). The arresting officer was the only witness called during the suppression hearing, and the facts are therefore largely based upon his testimony.

At 9:00 p.m. on June 19, 1990, Officer Hamner was patrolling in his police car. Officer Hamner saw defendant's vehicle traveling southbound on 400 East in Salt Lake City, and recognized the vehicle as one he had seen on several occasions near two local bars known for criminal activity, including illegal drug use. Officer Hamner believed the vehicle belonged to Jose Cruz, and after observing the driver of the car, believed the driver was Cruz. Officer

Hamner recognized Cruz from his undercover operations in the area approximately nine months earlier. During this period, individuals had pointed out Cruz to Officer Hamner and indicated Cruz was a drug dealer. The individual believed to be Cruz had also introduced himself to Officer Hamner. Further, Officer Hamner had seen photographs of Cruz during his work with the Metro Narcotics Strike Force.

Because Cruz did not have a valid driver's license nine months earlier, Officer Hamner called police dispatch to see if Cruz had a license. The radio operator informed Officer Hamner that there was no record of Jose Cruz having a driver's license. Officer Hamner then observed defendant turn onto 700 South without signaling. Officer Hamner pulled defendant over and asked to see his driver's license. Although Officer Hamner admitted he suspected defendant had been involved with drugs, he testified that he stopped defendant for driving without a license and failing to signal. Defendant was unable to produce a driver's license but did give Officer Hamner an identification card indicating he was "Geraldo Lopez." Officer Hamner then did a warrants check on defendant under the name of Lopez which revealed three outstanding warrants. Officer Hamner placed defendant under arrest and cited defendant for driving without a license and failing to signal before turning. Officer Hamner impounded defendant's car and during an inventory search, he and another officer discovered several bags of cocaine.

Defendant was charged with one count of unlawful possession of a controlled substance with intent to distribute, a second-degree felony, in violation of Utah Code Ann. section 58-37-8(1)(a)(iv) (Supp.1990). Defendant filed a motion to suppress the evidence seized during the search of his car. Relying on this court's opinion in *Sierra*, 754 P.2d 972, the trial court concluded Officer Hamner's stop of defendant was an unconstitutional "pretext" stop, and ordered the evidence seized by Officer Hamner suppressed. Following the trial court's

---

**1.** This amended opinion replaces the opinion in

Case No. 900484–CA issued March 2, 1992.

suppression ruling, the State petitioned for interlocutory review of the trial court's ruling, which we granted.

## II. THE FOURTH AMENDMENT AND AUTOMOBILE STOPS

In considering a motion to suppress, we review a trial court's underlying factual findings under a "clearly erroneous" standard. *State v. Smith*, 781 P.2d at 881; *Sierra*, 754 P.2d at 974. However, we review the trial court's ultimate legal conclusions flowing from these factual findings under a "correctness" standard. *State v. Steward*, 806 P.2d 213, 215 (Utah App.1991).

The Fourth Amendment to the United States Constitution secures the right of individuals to be free from unreasonable searches and seizures.

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend IV.[2]

■ The Fourth Amendment's protection from unreasonable searches and seizures extends to automobiles. *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979); *State v. Schlosser*, 774 P.2d 1132, 1135 (Utah 1989); *see State v. Grovier*, 808 P.2d 133, 135 (Utah App.1991). "The Fourth and Fourteenth Amendments are implicated ... because stopping an automobile and detaining its occupants constitute a 'seizure' within the meaning of those Amendments, even though the purpose of the stop is limited and the resulting detention quite brief." *Prouse*, 440 U.S. at 653, 99 S.Ct. at 1396. Thus, the Fourth Amendment prohibits po-

lice officers from randomly or arbitrarily stopping vehicles on the highway. *See id.* at 654–56, 99 S.Ct. at 1396–98. Among the situations that courts have identified where a police officer is justified in stopping a vehicle are: (1) When the officer observes the driver commit a traffic violation; *e.g., State v. Smith*, 781 P.2d at 882–83; *Kehoe v. State*, 521 So.2d 1094, 1095–96 (Fla. 1988); (2) when the officer has a reasonable articulable suspicion that the driver is committing a traffic offense, such as driving under the influence of alcohol or driving without a license; *e.g., Grovier*, 808 P.2d at 135; *State v. Baird*, 763 P.2d 1214, 1216 (Utah App.1988); and (3) when the officer has a reasonable articulable suspicion that the driver is engaged in more serious criminal activity, such as transporting drugs; *e.g., United States v. Lyles*, 946 F.2d 78, 81 (8th Cir.1991); *United States v. Morgan*, 936 F.2d 1561, 1567 (10th Cir. 1991); *Sierra*, 754 P.2d at 975.

■ The issues presented at the suppression hearing and now on appeal pertain to the first two categories outlined above. The State contends Officer Hamner was justified in stopping defendant because defendant had committed a traffic violation by failing to signal before turning, and the officer had reason to believe defendant was driving without a license. Alternatively, the State argues the case should be remanded because of insufficient findings under both these issues and because the trial court incorrectly applied the pretext doctrine. We agree with the State that the trial court applied the wrong legal standard when holding Officer Hamner's traffic stop was a pretext stop. We also agree that the court's findings of fact were inadequate with regard to both the pretext stop and whether Officer Hamner had a reasonable suspicion that defendant was driving without a license. We therefore reverse and

2. Although on appeal defendant claims Officer Hamner violated his rights under both the federal constitution and Article I, Section 14 of the Utah Constitution, defendant offers no argument that our judgment or analysis should differ under these two provisions. We thus limit our analysis to the Fourth Amendment and

make no comment concerning the search and seizure provisions of the Utah Constitution and pretext stops. *See generally State v. Larocco*, 794 P.2d 460, 465 (Utah 1990) (plurality) (analyzing Utah Constitution "search and seizure" provision where analysis under federal Constitution may differ).

remand.[3] Because we reverse and remand for a fresh analysis of the legality of the traffic stop, we do not reach the issue of the legality of the subsequent detention.

## III. PRETEXT TRAFFIC STOP

### A. When the Pretext Doctrine Applies

██ In recent years, this court has joined other courts in construing the protections afforded by the Fourth Amendment[4] by adopting what we now commonly refer to as the "pretext doctrine." *See, e.g., Grovier,* 808 P.2d at 135–37; *State v. Marshall,* 791 P.2d 880, 882–83 (Utah App.), *cert. denied,* 800 P.2d 1105 (Utah 1990); *Baird,* 763 P.2d at 1216–17; *Sierra,* 754 P.2d at 977–80; *see also United States v. Guzman,* 864 F.2d 1512, 1518–19 (10th Cir.1988); *United States v. Smith,* 799 F.2d 704, 708 (11th Cir.1986); sources cited in footnote eight. In Utah, the pretext doctrine applies in cases where an officer claims to have stopped a vehicle for a minor traffic violation, but where the court determines the stop was not made because of the traffic violation but rather due to an unconstitutional motivation and, therefore, the officer has deviated from the normal course of action expected of a reasonable officer.[5] *Sierra,* 754 P.2d at 978. We have articulated the pretext doctrine as whether a "reasonable ... officer, in view of the totality of the circumstances confronting him or her, *would* have stopped"

the vehicle for the traffic violation absent the unconstitutional motivation. *Id.*

Whether a traffic stop was an unconstitutional "pretext" stop requires a legal conclusion—thus we review it for "correctness." *Steward,* 806 P.2d at 215; *State v. Palmer,* 803 P.2d 1249, 1251 (Utah App. 1990), *cert. denied,* 815 P.2d 241 (Utah 1991).[6]

This court has utilized the "pretext" doctrine in two distinct situations. First, we have applied it where the facts demonstrated the driver did not commit a traffic violation.[7] *Baird,* 763 P.2d at 1217; *Sierra,* 754 P.2d at 979. The second situation is where the driver committed a minor traffic violation or the vehicle had a minor equipment problem, but where the court concludes that a reasonable police officer would not have stopped the vehicle absent the unconstitutional motivation. *See, e.g., State v. Smith,* 781 P.2d at 883; *Kehoe,* 521 So.2d at 1097. Because defendant does not dispute that he failed to signal before turning in violation of Utah law, we address the second variation of the pretext doctrine, i.e., where a traffic violation has occurred.

### B. Reasons for the Pretext Doctrine

Because Judge Russon in his dissent has chosen to follow the State's plea that we abandon the pretext doctrine, we reexamine the underlying policies that persuaded us to adopt the doctrine in the first instance.[8]

---

**3.** The defendant claims we should simply "assume that the trier of facts found them in accord with its decision," citing *State v. Ramirez,* 817 P.2d 774, 787 (Utah 1991). However, we can utilize this approach only "if from the evidence it would be reasonable to find facts to support [the decision]." *Id.* The record in this case is ambiguous and incomplete on the critical factual issues. The record evidence does not clearly support the trial court's ruling and thus we must remand. *Id.* at 788 (Utah 1991).

**4.** We have never expressly considered whether the pretext doctrine is also rooted in Article I, Section 14 of the Utah Constitution. There is, however, no reason to believe at least the same protections are not afforded under our state constitution.

**5.** We have also referred to this standard as the "hypothetical reasonable officer" standard. *See Sierra,* 754 P.2d at 977–78.

**6.** *See generally State v. Vigil,* 815 P.2d 1296, 1298–1301 (Utah App.1991) (discussing in some detail bifurcated standard of review applied to mixed questions of fact and law in Fourth Amendment context).

**7.** There is little question that under these circumstances a traffic stop is unconstitutional. Judge Russon's dissenting opinion would recognize such stops as unconstitutional.

**8.** Apart from Judge Russon's dissent in this case, every other judge on the Utah Court of Appeals has cited the pretext doctrine with approval. *See State v. Lovegren,* 798 P.2d 767, 770 n. 10 (Utah App.1990) (Bench, Davidson, and

The adoption of the pretext doctrine is consistent with existing legal authority. Although the United States Supreme Court has yet to address the pretext doctrine, a number of federal circuit courts have approved the doctrine. *See Guzman,* 864 F.2d at 1515; *United States v. Smith,* 799 F.2d at 710–11.[9] In 1990, the Utah Supreme Court, by implication, ratified our application of the pretext doctrine in *State v. Arroyo,* 796 P.2d 684, 688 (Utah 1990). There, the Utah Supreme Court reached the issue of whether a voluntary consent which occurred after a pretextual traffic stop was sufficiently attenuated from the prior illegal pretext stop to allow the consent to validate the warrantless search. If the *Arroyo* court disapproved of the pretext doctrine, logic suggests the court would have rejected the doctrine and reversed this court without ever reaching the attenuation-consent issue. In fact, the *Arroyo* court referred to our pretext holding with approval:

> The court of appeals agreed [with the lower court's pretext finding], stating that under the totality of the circumstances, "*a reasonable officer would not have stopped Arroyo* and cited him for 'following too closely' except for some unarticulated suspicion of more serious criminal activity." The trial court and the court of appeals were clearly correct on [the pretext] issue—*Trooper Mangelson's stop was an unconstitutional pretext.*

*Id.* (emphasis added, citations omitted). Additionally, the majority of other states which have considered the issue have adopted the pretext doctrine.[10]

We are persuaded the pretext doctrine is necessary to prevent the abuse of various exceptions to the Fourth Amendment's warrant requirement. *See United States v. Trigg,* 878 F.2d 1037 (7th Cir.1989). Furthermore, the doctrine protects citizens from arbitrary activity by police officers and supports the Fourth Amendment's requirement of objective reasonableness to support any invasion by law enforcement. *See Maryland v. Macon,* 472 U.S. 463, 470–71, 105 S.Ct. 2778, 2783, 86 L.Ed.2d 370 (1985); *Scott v. United States,* 436 U.S. 128, 137–38, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168 (1978). Finally, the pretext doctrine requires courts to focus on the realities of police practices—not pretenses—thus protecting the integrity of the courts. *See United States v. Keller,* 499 F.Supp. 415, 418 (N.D.Ill.1980); *Arroyo,* 796 P.2d at 689.

There can be little dispute that in our society, minor traffic and equipment violations are pervasive. *See Sierra,* 754 P.2d at 978–79 (quoting 5 W. Lafave, Search and Seizure § 5.2(e) (2d ed. 1987)); *Kehoe,* 521 So.2d at 1097. Allowing police officers to stop vehicles for any minor violation when the officer in fact is pursuing a hunch would allow officers to seize almost any individual on the basis of otherwise unconstitutional objectives. Such unfettered discretion offends the Fourth Amendment. *See Terry v. Ohio,* 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968); *United States v. Smith,* 799 F.2d at 711.

Further, allowing police officers to make pretext stops implicates equal protection concerns and policies. We cannot ignore

---

Orme, J.J.); *State v. Smith,* 781 P.2d at 883 (Bench, Billings, Orme, JJ.); *State v. Marshall,* 791 P.2d 880, 883 (Utah App.1990) (Billings, Davidson, and Jackson, J.J.); *State v. Arroyo,* 770 P.2d 153, 154 (Utah App.1989), *rev'd on other grounds,* 796 P.2d 684 (Utah 1990) (Billings, Bench, and Garff, J.J.); *State v. Talbot,* 792 P.2d 489, 491–92 (Utah App.1990) (Billings, Greenwood, and Orme, J.J.); *Sierra,* 754 P.2d at 977–78 (Billings, Bench, and Jackson, J.J.).

**9.** *But see United States v. Trigg,* 925 F.2d 1064, 1065 (7th Cir.) (rejecting pretext doctrine), *cert. denied sub nom., Cummins v. United States,* — U.S. ——, 112 S.Ct. 428, 116 L.Ed.2d 448–49 (1991); *United States v. Cummins,* 920 F.2d 498,

500 (8th Cir.1990) (same), *cert. denied,* — U.S. ——, 112 S.Ct. 428, 116 L.Ed.2d 448–49 (1991).

**10.** *See New York v. Camarre,* 171 A.D.2d 1002, 569 N.Y.S.2d 223, 224, *appeal denied,* 78 N.Y.2d 953, 573 N.Y.S.2d 649, 578 N.E.2d 447 (1991); *Tarwid v. Georgia,* 184 Ga.App. 853, 363 S.E.2d 63, 64–65 (1987); *Kehoe,* 521 So.2d at 1096; *Illinois v. Guerrieri,* 194 Ill.App.3d 497, 501, 141 Ill.Dec. 580, 583, 551 N.E.2d 767, 770, *appeal denied,* 132 Ill.2d 549, 144 Ill.Dec. 261, 555 N.E.2d 380 (1990); *North Carolina v. Morocco,* 99 N.C.App. 421, 427, 393 S.E.2d 545, 548 (1990). *But see State v. Olaiz,* 100 Or.App. 380, 786 P.2d 734, 736, *appeal denied,* 310 Or. 122, 794 P.2d 793 (1990) (rejecting pretext doctrine).

**1046**

the reality that many pretext stop cases involve minorities and that in some cases one of the articulated reasons for the stop was that the occupants were Hispanic.[11] We are mindful that law enforcement officials often use racial characteristics as a basis for "hunch" criminal profiles in pretextual traffic stops. *Cf. United States v. Smith,* 799 F.2d at 711 (pretext stop occurring during officer's use of drug courier profile). Courts have consistently held these profiling techniques unconstitutional where they are the sole basis for making a traffic stop.[12] To permit police officers to use any minor traffic violation as a pretext to stop a vehicle encourages the selective enforcement of traffic regulations against minorities or "suspicious" classes, such as those with an unorthodox appearance or out-of-state license plates. Accordingly, in addition to Fourth Amendment concerns, equal protection policies constrain us to uphold the pretext doctrine.

Our colleague in dissent criticizes the pretext doctrine, claiming the doctrine invades the province of the legislature. We disagree. The pretext doctrine does not restrict the state legislature from enacting traffic regulations, nor does it facially invalidate any traffic regulation. Rather, the pretext doctrine restricts police discretion when used unconstitutionally. Long ago the United States Supreme Court recognized that a facially constitutional statute may become unconstitutional when selectively and arbitrarily enforced on a suspect class. *See Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 1073, 30 L.Ed. 220 (1886) (valid statute applied unconstitutionally where evidence showed administrative body granted or denied statutory licenses based on race of applicant).

Accordingly, we reaffirm our adoption of the pretext doctrine. It protects the privacy of all individuals by requiring that police be consistent in their enforcement of traffic regulations and prevents police from conducting warrantless searches and seizures based on an otherwise insufficient hunch of more serious criminal activity.

## C. The Reasonable Officer Standard

■ On appeal, the State asserts the trial court improperly focused exclusively on Officer Hamner's subjective state of mind in its pretext analysis. We agree.

In *Sierra,* we stated a court should make an "objective assessment of the officer's actions in light of the facts and circumstances confronting [the officer] at the time." 754 P.2d at 977. We emphasized that the proper inquiry is "whether a ... reasonable officer ... *would* have stopped" the defendant solely for commission of the traffic offense. *Id.* at 978; *see also Guzman,* 864 F.2d at 1517; *United States v. Smith,* 799 F.2d at 710–11; *Kehoe,* 521 So.2d at 1097. "The proper inquiry does not focus on whether the officer *could* validly have made the stop." *Sierra,* 754 P.2d at 978.

**11.** Numerous federal and state cases dealing with a pretext stop question have involved vehicle occupants of Hispanic or African–American descent. *See, e.g., United States v. Quinones–Sandoval,* 943 F.2d 771, 774 (7th Cir. 1991); *United States v. Rivera,* 906 F.2d 319, 322 n. 1 (7th Cir.1990); *United States v. Laymon,* 730 F.Supp. 332, 339 (D.Colo.1990); *United States v. Suarez,* 694 F.Supp. 926, 931 (S.D.Ga. 1988), *aff'd,* 885 F.2d 1574 (11th Cir.1989); *Arroyo,* 796 P.2d at 687 n. 3; *Limonja v. Commonwealth,* 7 Va.App. 416, 419, 375 S.E.2d 12, 13 (1988), *on rehearing,* 8 Va.App. 532, 383 S.E.2d 476 (1989), *cert. denied,* 495 U.S. 905, 110 S.Ct. 1925, 109 L.Ed.2d 288 (1990).

**12.** *See, e.g., Laymon,* 730 F.Supp. at 339 (use of drug profile to make traffic drug stop unconstitutional where evidence showed stop was based on race of defendants); *Lowery v. Commonwealth,* 9 Va.App. 314, 388 S.E.2d 265, 267 (1990) (defendant's race impermissible factor in traffic stop where driver matched drug courier profile); *see also State v. Shamblin,* 763 P.2d 425, 428 (Utah App.1988) (eschewing procedure that would permit selective enforcement in favor of one that promotes "a certain equality of treatment"); Comment, *The Use of the Drug Courier Profile in Traffic Stops: Valid Police Practice or Fourth Amendment Violation?,* 15 Ohio N.U.L.Rev. 593, *passim* (1988) (use of drug courier profiles in making traffic stops may violate Fourth Amendment); Note, *The Drug Courier Profile and Airport Stops: Reasonable Intrusions or Suspicionless Seizures?,* 12 Nova L.Rev. 273, 295–96 (1987) (drug courier profiles are susceptible to racial abuse and implicate Fourth Amendment concerns).

■ Further, we clearly indicated that the officer's subjective motivation is *not* the relevant inquiry. *Id.* at 977. Were the officer's subjective motivation the key factor, a defendant could use this improper motivation as an excuse to escape the consequences of an otherwise valid and reasonable stop.[13] The Fourth Amendment's protection from unreasonable searches and seizures is primarily grounded in protecting an individual's reasonable expectation of privacy. *See California v. Ciraolo,* 476 U.S. 207, 211, 106 S.Ct. 1809, 1811, 90 L.Ed.2d 210 (1986). An individual does not have a reasonable expectation that the police will not make a traffic stop when the individual commits a traffic violation the police regularly enforce. Thus, if a driver is stopped for traveling at eighty miles an hour in a school zone or running a red light—traffic offenses all drivers know the police regularly enforce—the driver does not have a reasonable expectation of privacy. In this circumstance, the driver should not be able to avoid a stop simply because the police officer also subjectively believed the driver might be transporting drugs as such a stop is not "unexpected" or "arbitrary." *See United States v. Mendenhall,* 446 U.S. 544, 553–54, 100 S.Ct. 1870, 1876–77, 64 L.Ed.2d 497 (1980).

Thus, the issue of whether a traffic stop is a pretext stop cannot turn on the issue of an officer's subjective intent, but rather, must turn on the objective question of whether a reasonable officer *would* have made the stop under the same circumstances absent the illegal motivation. *Sierra,* 754 P.2d at 977–78; *United States v. Smith,* 799 F.2d at 710–11; *Kehoe,* 521 So.2d at 1097.

"[A] stop [i]s unreasonable not because the officer secretly hope[s] to find evidence of a greater offense, but because it [i]s clear that an officer would have been uninterested in pursuing the lesser offense absent that hope." In other words, "the proper basis of concern is not with *why* the officer deviated from

the usual practice in this case but simply that he *did* deviate." *Guzman,* 864 F.2d at 1517 (quoting *United States v. Smith,* 799 F.2d at 709 and 1 W. Lafave, Searches and Seizures § 1.4(e) at 94).

Further, a focus on an individual officer's subjective intent as the measure of whether a stop is a pretext would violate the United States Supreme Court's ruling that the Fourth Amendment mandates an objective inquiry into police activity. *Macon,* 472 U.S. at 470–71, 105 S.Ct. at 2783; *Scott,* 436 U.S. at 137–38, 98 S.Ct. at 1223.

■ In making its suppression ruling, the trial court set forth its findings of fact which included, inter alia, the following:

Officer Hamner observed defendant make a left turn and says he did not see a signal at which time a stop was made; The underlying motivation for the stop was to search for drugs and all conclusions as to the identity of Mr. Lopez as Jose Cruz were erroneous.

The trial court's conclusions of law included the following:

The underlying motivation [was] to follow and to stop the search for drugs; The stop was a "pretext stop" the subsequent search of the car and seizure of the contraband also violated Mr. Lopez's state and federal constitutional rights against unreasonable searches and seizures.

In its cursory findings and conclusions, the trial court erred in focusing exclusively on Officer Hamner's subjective state of mind in determining the officer's stop was a pretext stop. The court also failed to address many relevant uncontested facts. The officer testified he stopped defendant's car because he believed defendant was Cruz, believed defendant was driving without a license and because he saw defendant make a turn without signaling. The officer further testified that he routinely issues citations for failure to signal—writing

**13.** The reasonable officer standard is well entrenched as the proper standard under the pretext doctrine. *See Guzman,* 864 F.2d at 1515–16; *Smith,* 799 F.2d at 708; *Kehoe,* 521 So.2d at 1096; *Grovier,* 808 P.2d at 135; *Baird,* 763 P.2d at 1216; *Marshall,* 791 P.2d at 882–83; *Sierra,* 754 P.2d at 977–80.

about seven tickets per month. He stated he always stops vehicles where he believes the driver is driving without a license unless he is on a high priority call. There was no contrary evidence as to what Officer Hamner routinely did, nor any evidence suggesting that what he routinely did was at odds with what a reasonable officer would do. The court further did not comment on the officer's credibility as to his claimed reasons for the stop in this instance. The court's only relevant findings were that the driver made a turn without signaling and "the underlying motivation for the stop was to search for drugs." The trial court incorrectly focused exclusively on the officer's subjective motivation while ignoring whether the officer would have made the stop regardless of that motivation. Accordingly, we reverse the trial court's determination that the stop was a pretext stop and remand the case for the trial court to apply the proper legal standard and to make relevant findings of fact necessary to apply that standard.[14]

### D. Relevant Evidence

 Because we are remanding the case for a further evaluation under the reasonable officer standard, we comment on the type of evidence that is relevant to determine what a reasonable officer would do under the same circumstances.[15] The fundamental rule is that a trial court may look to *all* facts and circumstances surrounding the traffic stop to determine if a reasonable officer would have made the stop absent the illegal motivation. *See, e.g., Arroyo,* 796 P.2d at 688; *Sierra,* 754 P.2d at 978.

 Although the pretext question does not turn on the arresting officer's

subjective motivation, a trial court may consider the officer's testimony as to his usual practice. Also relevant are the objective facts and circumstances preceding the stop. The involved officer's actions are neither *irrelevant* nor *determinative* as to what a reasonable officer would do under the circumstances.

In *United States v. Smith,* the court explained:

> In determining the validity of the stop of [defendant's] automobile by [the officer], we therefore are not concerned with [the officer's] subjective intent. His actions and his description of the circumstances surrounding the stop are, however, relevant to our inquiry. Thus, while [the officer's] courtroom declaration of motive is intriguing, what turns this case is the overwhelming objective evidence that [the officer] had no interest in investigating possible drunk driving charges: he began pursuit before he observed any "weaving" and, even after he stopped the car, he made no investigation of the possibility of intoxication. That he described the vehicle as being driven with an abundance of caution further indicates that the stop was unrelated to any possible concern with traffic safety. Based on this objective evidence, we conclude that a reasonable officer would not have stopped the car absent an additional, invalid purpose.

799 F.2d at 710–11.

 This court has repeatedly looked to the circumstances surrounding the stop in deciding whether the officer involved would have stopped the car for the traffic violation absent the unconstitutional motivation. The evidence is not determinative—as the relevant legal inquiry is wheth-

---

**14.** The facts in the record are undisputed as only Officer Hamner testified. The trial court intimated nothing which would suggest the court found the testimony not credible. In such situations, this court would ordinarily apply the undisputed facts and determine the proper result without the need for remand. *See, e.g., Lovegren,* 798 P.2d 767, 771 & n. 10. We refrain from doing so here because the scope of the evidentiary hearing and its focus on Officer Hamner's subjective motives were products of confusion as to the proper analysis under the pretext doctrine—which we hope is clarified by

this opinion. Therefore, we remand to allow the opportunity for the introduction of additional evidence, if necessary, and to allow the necessary findings for application of the pretext doctrine.

**15.** On appeal, the State points out that several of our prior opinions may be confusing to practitioners and courts attempting to apply the standard, and has requested that we clarify what evidence is relevant to a pretext inquiry to assist the trial court on remand.

er a reasonable officer would have stopped the vehicle absent the unconstitutional motivation. However, the evidence is probative of the inquiry as the officer involved is within the class of competent witnesses. *Sierra,* 754 P.2d at 979–80. Utah courts have never excluded the facts and circumstances surrounding the stop in evaluating the reasonable officer standard. Certainly the conduct of the officer involved *is some evidence* of what the objective reasonable officer would have done, especially if it is coupled with an indication by the officer as to whether the conduct is consistent at least with his own practice. Simply put, if an officer testifies to routinely making stops for a particular offense, it tends to show the stop was objectively reasonable; if the officer admits to having never before stopped a driver for the offense, it tends to show a reasonable officer would not have made the stop.

 In addition to evaluating the facts and circumstances surrounding the traffic stop, a trial court may also properly consider evidence of the normal practices of other police officers under similar circumstances, as well as indications of departmental policy. The reasonable officer inquiry considers all relevant facts and circumstances probative of whether a reasonable officer would have made the traffic stop absent the illegal motivation.

### E. Burden of Proof

 Both the State and defendant seek a clarification of the burden of going forward and the burden of proof in a pretext stop suppression hearing. When a search or seizure is made without a warrant, the burden is, in the first instance, upon the State to show the warrantless search meets an exception to the warrant rule. *Marshall,* 791 P.2d at 886–87; *New Mexico v.*

*Mann,* 103 N.M. 660, 712 P.2d 6, 10 (Ct. App.1985), *cert. denied,* 103 N.M. 740, 713 P.2d 556 (1986).

 In the pretext stop setting, this means the State first has the burden to show the warrantless traffic stop is lawful. Thus, the State must establish that a traffic violation occurred in the officer's presence or that the officer had probable cause or a reasonable suspicion to believe that a traffic violation had occurred. *Cf. United States v. Smith,* 799 F.2d at 709 ("weaving" not a violation of Florida law). Once the State makes this showing, the defendant must point to some evidence to support the defendant's claim that the stop was a pretext stop. *Cf. Marshall,* 791 P.2d at 886 (party with burden of pleading affirmative defense has burden of going forward with evidence sufficient to raise issue). This evidence will often come from the officer's own testimony.

 If the defendant sufficiently raises the pretext issue, the burden of proof is then ultimately upon the State to show that a reasonable officer would have made the stop absent the alleged illegal motivation.[16] *See, e.g., Mann,* 712 P.2d at 10 (State must show valid legal basis for stop and within exception to warrant rule); *see also Arroyo,* 796 P.2d at 687–88 (in consent setting, State has burden of showing consent was voluntary).

 The State may easily meet its burden by introducing the testimony of the arresting officer's justifications for the actual stop and the officer's normal practices. Absent some concession that the stop was outside normal practice, this may be all that is necessary. *See, e.g., Lovegren,* 798 P.2d at 771. The defendant then may of course challenge the State's showing by identifying facts and circumstances of the stop that demonstrate a reasonable officer would not have made the traffic stop ab-

---

**16.** The ultimate burden of proof is properly on the State for several reasons. First, because the seizure was conducted without a warrant, the State should bear the burden of showing the stop was not an intrusion on the defendant's reasonable expectation of privacy, including a showing of what a reasonable officer would do under the same circumstances. *See Arroyo,* 796 P.2d at 695. Additionally, because the State has the primary access to most of the relevant evidence, including the officer's past stop practices and the practices of other officers, we believe the burden of proof is properly placed on the State. *See, e.g., Staheli v. Farmers' Coop.,* 655 P.2d 680, 683 (Utah 1982) (burden of proof lies with party most likely to have access to evidence).

sent the unconstitutional motivation. A defendant might also introduce evidence that other officers normally do not stop vehicles for the same infractions or that stopping for such infractions is at odds with departmental policy or practice.[17]

## IV. INADEQUATE FINDINGS OF FACT ON REASONABLE SUSPICION

■■■ In addition to its pretext arguments, the State also argues the trial court's findings of fact were inadequate as to whether Officer Hamner had a reasonable suspicion that defendant was driving without a license. We agree. Initially, we note that the trial court's findings were very brief and did not set out the circumstances of the stop of defendant's car. More importantly, the findings do not clearly establish how Officer Hamner arrived at the suspicion that defendant was driving without a license, and are particularly confusing in describing the relationship between Cruz and Lopez—including whether Officer Hamner had ever been introduced to defendant under any name. The trial court's only finding of fact with regard to this issue stated: "[A]ll conclusions as to the identity of Mr. Lopez as Jose Cruz were erroneous." With no other findings on the relationship between Lopez and Cruz, we are unable to evaluate whether the court's conclusion that there was no reasonable suspicion to stop defendant for driving without a license was in error. *See State v. Lovegren*, 798 P.2d 767, 771 (Utah App.1990). Accordingly, on remand, the trial court should more fully explain the factual basis for its conclusion regarding reasonable suspicion.

## CONCLUSION

We reverse the trial court's conclusion that Officer Hamner's stop of defendant for failing to signal was a pretext stop on the ground that the trial court applied an improper legal analysis under the pretext doctrine and therefore made inadequate findings of fact. We also remand the case for further findings of fact and conclusions of law concerning whether Officer Hamner had a reasonable suspicion to believe defendant was driving without a license.

ORME, J., concurs.

RUSSON, Judge (concurring in part and dissenting in part):

Although I concur that this case must be reversed and remanded, I dissent (1) from the majority's analysis used in reaching that result and (2) from the majority's instructions upon remand that the trial court should reanalyze the evidence and issue a revised order on Lopez's motion to suppress. I would reverse and remand this case for trial in which the evidence in question would be admitted.

On appeal, the State has invited us to reconsider the pretext analysis first set forth in *State v. Sierra*, 754 P.2d 972 (Utah App.1988), *disavowed on other grounds, State v. Arroyo*, 796 P.2d 684, 689–92 (Utah 1990). Upon that invitation, I would

---

**17.** We concede that the pretext doctrine complicates matters for trial counsel and trial courts. However, the effort is justified by the important constitutional principles involved. *See I.N.S. v. Chadha*, 462 U.S. 919, 944, 103 S.Ct. 2764, 2781, 77 L.Ed.2d 317 (1983) ("the fact that a given law or procedure is efficient, convenient, and useful in facilitating functions of government, standing alone, will not save it if it is contrary to the Constitution"). Furthermore, the doctrine will be rarely applied if properly used. Only a small minority of traffic stop cases implicate the pretext doctrine when the focus is on "whether a reasonable officer would have made the stop absent the illegal motivation." In clear-cut cases, as mentioned earlier, of driving eighty miles-per-hour in a school zone or consuming alcohol while driving, common knowledge suggests that reasonable officers everywhere routinely stop such offenders. In such cases, the pretext doctrine cannot be asserted in good faith and can be dismissed quickly by trial judges.

The pretext doctrine has been applied only to the unusual stop where discretion is broad, such as weaving or following too closely or a minor equipment problem. The cases often involve a clear admission by the officer that the stop was not made for the cited violation but because of a hunch that more serious criminal activity was involved. *See, e.g., Arroyo*, 796 P.2d at 688 and n. 3; *Sierra*, 754 P.2d at 977; *see also State v. Mendoza*, 748 P.2d 181 (Utah 1987) ("erratic" driving with police tailing insufficient to support reasonable suspicion); *Baird*, 763 P.2d at 1217; *Guzman*, 864 F.2d at 1518; *United States v. Smith*, 799 F.2d at 706.

recommend a return to the basic analysis of the legality of seizures established in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and *Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 50 L.Ed.2d 660 (1979) for most traffic stop cases, limiting the use of *Sierra* to the narrow group of cases to which pretext analysis properly applies. Accordingly, I would hold that the following is the proper, and more prudent, analysis.

## I. THE FOURTH AMENDMENT AND AUTOMOBILE STOPS

The Fourth Amendment to the United States Constitution states that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." U.S. Const. amend. IV. It follows that "[a]lthough a person has a lesser expectation of privacy in a car than in his or her home, one does not lose the protection of the Fourth Amendment while in an automobile." *State v. Schlosser,* 774 P.2d 1132, 1135 (Utah 1989) (citation omitted). Thus, we have held that the stopping of an automobile and the consequent detention of its occupants constitutes a "seizure" within the meaning of the Fourth Amendment "even if the purpose of the stop is limited and the resulting detention brief." *State v. Steward,* 806 P.2d 213, 215 (Utah App.1991) (citation omitted).

However, the Fourth Amendment does not prohibit all seizures, but only *unreasonable* ones. *Terry v. Ohio,* 392 U.S. 1, 9, 88 S.Ct. 1868, 1873, 20 L.Ed.2d 889 (1968). Under *Terry,* the determination of whether a seizure is reasonable involves a two-pronged test: (1) Was the police officer's action justified at its inception?, and (2) Was the officer's action reasonably related in scope to the circumstances which justified the interference in the first place? *Id.,* 392 U.S. at 19–20, 88 S.Ct. at 1879; *accord State v. Robinson,* 797 P.2d 431, 435 (Utah App.1990).

As to the first prong, stopping an automobile is constitutionally justified if the stop is (1) incident to a lawful citation for a traffic violation, or (2) based upon a reasonable and articulable suspicion that the defendant has committed or is about to commit a crime. *State v. Talbot,* 792 P.2d 489, 491 (Utah App.1990).[1]

In the case at bar, the first prong, whether the stop was justified at its inception, is easily satisfied since making a turn without signaling is prohibited by Utah Code Ann. § 41–6–69(1)(a) (1988), and driving without a license is prohibited by Utah Code Ann. § 41–2–104 (Supp.1991). "[A]s long as an officer suspects the driver is violating 'any one of the multitude of applicable traffic and equipment regulations,' the police officer may legally stop the vehicle." *State v. Marshall,* 791 P.2d 880, 883 n. 3 (Utah App.), *cert. denied,* 800 P.2d 1105 (Utah 1990) (quoting *Delaware v. Prouse,* 440 U.S. 648, 660, 99 S.Ct. 1391, 1400, 59 L.Ed.2d 660 (1979)); *accord Pennsylvania v. Mimms,* 434 U.S. 106, 109, 98 S.Ct. 330, 332, 54 L.Ed.2d 331 (1977); *Talbot,* 792 P.2d at 491. Therefore, Officer Hamner's stop of Lopez's vehicle was clearly justified at its inception.

However, Officer Hamner's actions must also be reasonably related in scope to the stop of Lopez's vehicle for the aforementioned traffic violations. This determination rests on whether Officer Hamner was justified in running a warrants check on Lopez without further evidence of criminal activity on Lopez's part, an issue of first impression in Utah. Some guidance is provided by the Supreme Court's decision in *Michigan v. Summers,* 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). In *Summers,* the Supreme Court noted that an officer may communicate with others, either police or private citizens, in order to confirm the identification of the individual stopped or to determine whether that individual is "otherwise wanted," unless such action makes the period of detention un-

---

**1.** Since Officer Hamner's stop of Lopez was based upon traffic violations, whether Officer Hamner had reasonable suspicion to believe that a more serious crime had been or was about to be committed need not be examined. *State v. Smith,* 781 P.2d 879, 882 (Utah App. 1989).

duly long. *Id.*, 452 U.S. at 700–01 n. 12, 101 S.Ct. at 2593 n. 12 (quoting 3 LaFave, Search and Seizure § 9.2, pp. 36–37 (1978)). As to the length of such detention, the Supreme Court has held that the detention "must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983). Similarly, the Utah Supreme Court has stated that the length and scope of a detention for a traffic violation "must be 'strictly tied to and justified by' the circumstances which rendered its initiation permissible." *State v. Johnson*, 805 P.2d 761, 763 (Utah 1991) (quoting *Terry*, 392 U.S. at 19–20, 88 S.Ct. at 1879). Additionally, the *Robinson* case states that "[a]n officer conducting a routine traffic stop may request a driver's license and vehicle registration, *conduct a computer check*, and issue a citation." *Robinson*, 797 P.2d at 435 (emphasis added) (citing *United States v. Guzman*, 864 F.2d 1512, 1519 (10th Cir.1988)). While *Robinson* did not specifically address the question of whether running a warrants check exceeds the lawful basis for a traffic stop, conducting a computer check most certainly can be read to include a warrants check.

Moreover, other jurisdictions which have considered the very question of conducting warrants checks during the course of a traffic stop have held that such action is permissible so long as it does not significantly extend the period of detention. *See, e.g., United States v. Contreras–Diaz*, 575 F.2d 740, 744–45 (9th Cir.), *cert. denied*, 439 U.S. 855, 99 S.Ct. 167, 58 L.Ed.2d 161 (1978); *State v. Ybarra*, 156 Ariz. 275, 276, 751 P.2d 591, 592 (1987); *Storm v. State*, 736 P.2d 1000, 1001–02 (Okla.Crim. App.1987); *State v. Nelson*, 76 Or.App. 67, 708 P.2d 1153, 1155 (1985); *State v. Smith*, 73 Or.App. 287, 698 P.2d 973, 976 (1985) (citing *State v. Perry*, 39 Or.App. 37, 42, 591 P.2d 379, 382 (1979); *State v. Carter*, 34 Or.App. 21, 32, 578 P.2d 790, 796–97 (1978), *aff'd*, 287 Or. 479, 600 P.2d 873 (1979)); *Petty v. State*, 696 S.W.2d 635, 638–39 (Tex.App.1985); *cf. United States v. Luckett*, 484 F.2d 89, 90–91 (9th Cir.1973) (evidence inadmissible because running

warrants check extended detention beyond scope of original reason for stop). I find this authority persuasive, and would adopt the rule that running a warrants check in the course of a traffic stop is permissible, so long as it does not significantly extend the period of detention beyond that reasonably necessary to effectuate the original purpose of the stop.

Applying this rule to the case at bar, I would hold that since the warrants check was conducted within the course of Officer Hamner's stop of Lopez for traffic violations, it did not exceed the scope of that stop, and was therefore permissible. Moreover, although Officer Hamner's attention was initially drawn to Lopez's car for reasons other than those for which he stopped Lopez, this "does not insulate the defendant from being stopped for a traffic violation." *State v. Smith*, 781 P.2d 879, 883 (Utah App.1989) (citing *State v. Tucker*, 286 Or. 485, 595 P.2d 1364, 1368–70 (1979)). Accordingly, Officer Hamner's stop of Lopez's vehicle was proper, and the subsequent seizure was valid.

## II. PRETEXT DOCTRINE

However, the majority's position that the test for pretext established in *State v. Sierra*, 754 P.2d 972 (Utah App.1988), *disavowed on other grounds, State v. Arroyo*, 796 P.2d 684, 689–92 (Utah 1990), should be applied to the facts in this case must also be addressed. The *Sierra* test for pretext in traffic stop cases is based on the following language from *Scott v. United States*, 436 U.S. 128, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978): "would the facts available to the officer at the moment of the seizure or the search 'warrant [an officer] of reasonable caution in the belief' that the action taken was appropriate?" *Sierra*, 754 P.2d at 977–78 (quoting *Scott*, 436 U.S. at 137, 98 S.Ct. at 1723). Thus, the *Sierra* court reasoned that in traffic stop cases the "focus [is] on whether a hypothetical reasonable officer, in view of the totality of the circumstances confronting him or her, *would* have stopped [the defendant] to issue a [citation]." *Sierra*, 754 P.2d at 978 (emphasis in original).

I would decline to apply *Sierra* to the facts in this case for several reasons. My initial concern centers on the fact that the *Scott* test focuses on whether an officer's suspicion of criminal activity is reasonable, a factor which cannot be readily translated to apply in traffic stop cases. The *Scott* case involved a determination of whether the officer had a reasonable suspicion of criminal activity in light of the facts known to him at that time. Put differently, did the circumstances, viewed objectively, justify the action taken? *Scott,* 436 U.S. at 137–38, 98 S.Ct. at 1723. In traffic stop cases, however, that question will always be answered in the affirmative since issuance of a citation is *always* justified when the officer observes a statute being violated. Police officers have a sworn duty to enforce all laws passed by the legislature, including traffic laws. Utah Code Ann. § 41-1-17 (1988) of the Motor Vehicle Act provides:

> The commission, and such officers and inspectors of the department as it shall designate, peace officers, state patrolmen, and others duly authorized by the department or by law shall have power and *it shall be their duty:*
>
>> (a) To enforce the provisions of this act and of all other laws regulating the registration or operation of vehicles or the use of the highways.
>>
>> (b) To make arrests upon view and without warrant for any violation committed in their presence of any of the provisions of this act or other law regulating the operation of vehicles or the use of the highways.
>>
>> (c) When on duty, upon reasonable belief that any vehicle is being operated in violation of any provision of this act or of any other law regulating the operation of vehicles to require the driver thereof to stop, exhibit his driver's license and the registration card issued for the vehicles and submit to an inspection of such vehicle, the registration plates and registration card thereon.

*Id.* (emphasis added). Thus, police officers do not have the discretion to determine which laws would be reasonable to enforce.

Such action is appropriate whenever an officer suspects that the driver is violating one of the applicable traffic regulations. *State v. Marshall,* 791 P.2d 880, 883 n. 3 (Utah App.), *cert. denied,* 800 P.2d 1105 (Utah 1990); *State v. Talbot,* 792 P.2d 489, 491 (Utah App.1990); *accord State v. Sanders,* 154 Ga.App. 305, 267 S.E.2d 906 (1980); *Braxton v. State,* 234 Md. 1, 197 A.2d 841 (1964); *Anderson v. State,* 444 P.2d 239 (Okla.Crim.1968).

Also, police officers cannot be expected, every time they observe a violation of law, to make a legal decision whether or not a "reasonable officer" would arrest the violator. In fact, even those cases in which the *Sierra* test has been successfully met do not establish a standard by which the State can prove that a hypothetical reasonable officer would stop the vehicle. In one case, the fact that the officer at hand often makes such arrests was found to be relevant. *See State v. Lovegren,* 798 P.2d 767, 771 n. 10 (Utah App.1990). In another, the court determined that the stop was justified based on the fact that other jurisdictions had so held under similar circumstances. *See Marshall,* 791 P.2d at 883. In a third, the trial court's decision that the violation in question "is the type of clear cut traffic violation for which officers routinely stop citizens and issue citations" was sufficient. *See State v. Smith,* 781 P.2d 879, 883 (Utah App.1989). If the courts have not been able to articulate a standard for determining what a hypothetical reasonable officer would do, how can the police be expected to make on-the-spot judgments on this difficult legal question?

Nor can the enforceability of state laws depend upon the diligence by which police officers usually enforce such laws. Otherwise, derelict officers would set the standard by which laws would be enforced and thus limit diligent officers in performing their duty. Although the majority proposes that the pretext doctrine requires that police be consistent in their enforcement of traffic regulations, just the opposite is true. To allow police officers to decide which laws should or should not be enforced would destroy the uniform applica-

tion of laws throughout the state, since what might appear reasonable to officers in one part of the state might appear different to officers in other parts of the state. Accordingly, while the stopping of a vehicle merely to confirm or deny a "hunch," *see Talbot,* 792 P.2d at 491–92 n. 6, cannot be condoned, neither can it be left to police officers to determine which traffic laws it would be reasonable to enforce.

And finally, to hold that the police or the courts can determine what laws are reasonable enough to enforce creates a separation of powers problem. Although it is the judiciary's responsibility to determine the constitutionality of the laws, *Dean v. Rampton,* 556 P.2d 205, 206–07 (Utah 1976) (citing *Marbury v. Madison,* 1 Cranch 137, 2 L.Ed. 60 (1803); *State v. Betensen,* 14 Utah 2d 121, 378 P.2d 669 (1963)), it is not within the province of the executive branch or judicial branch to say whether those laws are reasonable. Such is clearly an invasion of the legislature's jurisdiction. "[I]t is not our prerogative to question the wisdom, social desirability, or public policy underlying a given statute. Those are matters left exclusively to the legislature's judgment and determination." *Condemarin v. University Hosp.,* 775 P.2d 348, 377 (Utah 1989) (Hall, J., dissenting) (citations omitted); *accord Masich v. United States Smelting, Ref. & Mining Co.,* 113 Utah 101, 126–27, 191 P.2d 612, 625, *appeal dismissed,* 335 U.S. 866, 69 S.Ct. 138, 93 L.Ed. 411 (1948); *Utah Manufacturers' Ass'n v. Stewart,* 82 Utah 198, 23 P.2d 229, 232 (1933) ("fairly debatable questions as to reasonableness, wisdom, or propriety [of legislative action] are not for

the courts, but for the Legislature"). Thus, it is violative of the principle of separation of powers to allow the police or the courts to determine whether it is reasonable to enforce any law duly passed by the legislature. Accordingly, *Sierra* should not be applied to cases such as this.

Nonetheless, there are cases in which pretext is relevant and must be considered. These cases differ from the case at bar in one significant aspect: a finding by the trial court that actually no violation occurred or that the stop was admittedly made for reasons other than the traffic violation. Thus, in cases such as *State v. Arroyo,* 796 P.2d 684, 688 (Utah 1990), where no violation occurred, pretext can be thereby established by the absence of a legitimate cause to stop the vehicle. Here, however, the undisputed testimony of Officer Hamner is that Lopez made a left turn without signaling and was driving without a license. *Compare id.; see also Talbot,* 792 P.2d at 491–92 (pretext analysis used when no indication that defendants were stopped for any traffic violation and where stop was in fact made for other reasons); *State v. Baird,* 763 P.2d 1214, 1217 (Utah App.1988) (pretext analysis used where facts demonstrate that the driver did not commit a traffic violation); *Sierra,* 754 P.2d at 979 (pretext analysis used when no indication in record that defendant had violated any traffic statutes).[2]

Furthermore, *Arroyo* does not approve the *Sierra* "reasonable officer" test, in the broad sense that the majority believes. While the Utah Supreme Court did approve the court of appeals's determination that

---

**2.** Similarly, a number of the pretext cases from other jurisdictions that are cited by the majority involve situations in which no traffic violation had occurred or where the stop was admittedly made for reasons other than a traffic violation. *See, e.g., United States v. Smith,* 799 F.2d 704, 706 (11th Cir.1986) (officer admitted that he did not stop the vehicle because it "weaved," but because of his reliance on a "drug courier profile"); *Kehoe v. State,* 521 So.2d 1094, 1095 (Fla.1988) (officer admitted that he stopped the vehicle primarily because he was told by another officer to do so, not because of a traffic violation); *Tarwid v. State,* 184 Ga.App. 853, 363 S.E.2d 63, 64–65 (1987) (officer admitted that at the time of the stop, defendants were not com-

mitting any traffic violations). Others involve stops which would have to be invalidated as exceeding the scope under the two-prong *Terry* test analysis proposed herein. *See, e.g., United States v. Guzman,* 864 F.2d 1512, 1514 (10th Cir.1988) (rather than issuing a warning or citation, officer conducted a further investigation admittedly to determine whether defendants were "hauling contraband in the vehicle"); *People v. Camarre,* 171 A.D.2d 1002, 569 N.Y.S.2d 223, 224, *appeal denied,* 78 N.Y.2d 952, 573 N.Y.S.2d 649, 578 N.E.2d 447 (1991) ("What occurred was not a traffic arrest, but a full-blown arrest based on suspicion of drug activity, as evidenced by the fact that the defendant was frisked and placed in handcuffs.").

the stop in that case was an unconstitutional pretext, it did so on the basis of the following facts:

8. As a result [of] Trooper Mangelson's training at [a] seminar, he admitted that whenever he observed an Hispanic individual driving a vehicle he wanted to stop the vehicle. The Trooper also admitted that once he stopped an Hispanic driver, 80% of the time he requested permission to search the vehicle.

. . . .

14. Under cross-examination, the Trooper denied that it was his normal procedure when issuing a citation to an individual for "Following too Close" to record the license plate of the front car. However, the Trooper's denial on this point was contradicted by tape recorded testimony from the Trooper at the preliminary hearing held in this matter. The Trooper admitted that he had not recorded the license plate number of the front car in this case.

15. The Defendant testified that he was at least 85 to 95 feet or nine car lengths, behind the vehicle immediately in front of his own. The Court finds this testimony to be credible.

16. In contrast, the Court is unpersuaded that Trooper Mangelson rightfully determined that the Defendant was "Following too Close" or that any other attested facts preponderated to the level necessary to permit a constitutional stop of the Defendant's vehicle. Moreover, the Court finds that the Trooper's own testimony established the probability that no violation of law occurred, and that the alleged violation was only a pretext asserted by the Trooper to justify his stop of a vehicle with out of state license plates and with occupants of Latin origin.

*Arroyo,* 796 P.2d at 688 n. 3. Thus, it is clear that the Utah Supreme Court did not adopt the *Sierra* "reasonable officer" test, but merely found that the evidence, including the trooper's admissions, indicated that no traffic violation had occurred, and based its conclusion that the stop was an unconstitutional pretext on that indication.

Additionally, the majority's argument that the pretext doctrine is beneficial because it restricts police discretion when used unconstitutionally is also without merit. As noted above, Utah Code Ann. § 41–1–17 (1988) of the Motor Vehicle Act explicitly provides that whenever a police officer witnesses a violation of any of the laws regulating the registration or operation of vehicles or the use of the highways, he or she has an affirmative duty to enforce that law. No police discretion is provided for, and none can be read into the statute. Accordingly, it makes little sense to argue that discretion is being restricted where none, in fact, exists.

Nor does it follow that limiting the use of the pretext doctrine will result in selective and arbitrary enforcement of the traffic laws. If evidence of selective enforcement exists, then the remedy, as in *Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886), is to hold that the statute, while facially constitutional, was unconstitutionally applied. The solution is not, as the majority suggests, to apply the pretext doctrine in the name of restricting a nonexistent police discretion, but instead to limit unconstitutional police action by returning to the sound principles of *Terry v. Ohio* and *Delaware v. Prouse.*

## III. CONCLUSION

The majority expresses its concern that the police will ride roughshod over the citizenry if the *Sierra* doctrine is not applied to cases such as this. I disagree. Sufficient protection against unwarranted searches and seizures of defendants can be achieved by the application of the two-pronged *Terry* test, which simply requires the answering of two questions: (1) Was the police officer's action justified at its inception?, and (2) Was the officer's action reasonably related in scope to the circumstances which justified the interference in the first place? *Terry v. Ohio,* 392 U.S. 1, 19–20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968). The *Terry* test sufficiently limits the police officer's actions in such cases to those within the scope and duration of the original stop, in this case, to running a

computer check, which may include a driver's license check and/or warrants search, and issuing a citation. Thus, the officer will not be able to use the traffic stop as a springboard into further investigation unless in the course of such a stop, a reasonable suspicion, based on articulable facts, of criminal activity arises, or the computer check reveals an arrest warrant. If the computer check or other circumstances do not reveal a reason to further detain the individual, the officer must simply issue the citation and allow the individual to leave.

Thus, in the case at bar, I would conclude that Officer Hamner's stop of Lopez for the traffic violation was proper, as was the warrants check made within the duration of such stop, as was the arrest based on the warrants, and that the subsequent inventory search of Lopez's vehicle during impoundment and seizure of the cocaine found therein was valid. Accordingly, the trial court's order granting suppression of the evidence should be reversed and remanded for trial in which the evidence should be included.[3]

---

**3.** Lastly, I feel compelled to respond to footnote eight of the majority's opinion, wherein it states that all of the other judges of the Utah Court of Appeals have cited the *Sierra* doctrine with approval. Much of present-day law is based on the wisdom of lone dissenters. Otherwise, the law would never progressively improve. If such were not the case, *Dred Scott v. Sanford,* 60 U.S.

393, 19 How. 393, 15 L.Ed. 691 (1857), would still be good law, and *Brown v. Board of Educ. of Topeka, Kan.,* 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083 (1955) might never have changed the "separate but equal" doctrine of *Plessy v. Ferguson,* 163 U.S. 537, 16 S.Ct. 1138, 41 L.Ed. 256 (1896).