**The STATE of Utah, Plaintiff and Appellee,**

v.

**Michael STEWARD, Defendant and Appellant.**

**No. 900158–CA.**

Court of Appeals of Utah.

Feb. 6, 1991.

---

John D. O'Connell, Salt Lake City, for defendant and appellant.

R. Paul Van Dam, Atty. Gen., and Charlene Barlow, Asst. Atty. Gen. (argued), Salt Lake City, for plaintiff and appellee.

Before BILLINGS, GARFF and RUSSON, JJ.

## OPINION

RUSSON, Judge:

Michael Steward appeals his convictions of unlawful possession of marijuana with intent to distribute, a third degree felony, in violation of Utah Code Ann. § 58–37–8(1)(a)(iv) (Supp.1990), and unlawful possession of methamphetamine, a third degree felony, in violation of Utah Code Ann. § 58–37–8(2)(a)(i) (Supp.1990). We reverse and remand.

## FACTS

The determination of the constitutionality of a police officer's stop of a person under the fourth amendment of the U.S. Constitution turns upon the facts of each case, and, therefore, we review the facts in detail. *State v. Sierra*, 754 P.2d 972, 973 (Utah Ct.App.1988).

On August 20, 1989, members of the Metro Narcotics task force executed search warrants on three houses, in a cul-de-sac off Lead Mine Road near Bingham Canyon, which allegedly contained a methamphetamine laboratory and controlled substances. A functional methamphetamine lab and packages of marijuana were found in one house and chemicals for preparing methamphetamine in another. Weapons such as handguns, shotguns, rifles, knives and crossbows were found in all three houses. At least three other houses in the cul-de-sac were not involved in the searches.

The Metro Narcotics team enlisted the support of the Salt Lake Police Department Special Weapons and Tactics (S.W.A.T.) team to assist in securing the area during the searches. The S.W.A.T. team was asked to stop vehicles entering the cul-de-sac, determine the identification and destination of the occupants thereof, and detain individuals headed for one of the involved houses. The officers did not wear traditional police uniforms, but were dressed instead in camouflage uniforms with small patches on the chest, shoulder, and helmet which identified them as police officers.

At approximately 11:50 p.m., Steward turned his pickup truck into the cul-de-sac. The S.W.A.T. team, which had been concealed in the shadows, quickly approached Steward's vehicle and ordered him to stop. Steward stopped and put his vehicle in reverse. According to one officer, Steward looked "kind of panicky or startled." An officer opened the driver's side door and ordered Steward to stop. The S.W.A.T. team then identified themselves as police officers and inquired as to his destination. Steward indicated that he was going to visit a friend. The person identified was an occupant of one of the involved houses. Steward was ordered out of the pickup, at which time he was patted down and his truck searched for weapons. During the search, an open blue gym bag was found on the floor on the passenger's side, with the tops of plastic bags observable therein.

The officers radioed Detective Huggard at the search site, informing him of the stopped vehicle and the suspected presence of marijuana. Detective Huggard proceeded to Steward's pickup, retrieved the gym bag and discovered four baggies containing a substance later determined to be marijuana. Numerous empty baggies were also found. Steward was then placed under arrest.

Detective Huggard next retrieved a leather jacket from the pickup, which Steward identified as his. The jacket was checked for weapons, and a wallet was found containing $4,000 in forty $100 bundles. Also found was a bindle containing a white, powdery substance later determined to be methamphetamine. A further search

of Steward revealed an additional $1,257 in the front pocket of his jeans.

Prior to trial, Steward filed a motion to suppress evidence seized from him as a result of this stop. Following a hearing, the motion was denied. The matter was subsequently tried and Steward found guilty of both charges.

## ISSUES

Steward raises two issues on appeal: First, was the trial court correct in determining that the initial investigatory stop of defendant's vehicle was lawful? Second, was the trial court correct in determining that the subsequent search of defendant and his vehicle was lawful?

## INVESTIGATORY STOP

█ In absence of clear error, the trial court's findings of fact underlying its decision to grant or deny the suppression motion must be upheld. *State v. Bruce*, 779 P.2d 646, 649 (Utah 1989). However, as for the trial court's legal conclusions in regards thereto, the correction of error standard applies. *State v. Johnson*, 771 P.2d 326, 327 (Utah Ct.App.1989), *rev'd on other grounds*, 805 P.2d 761 (Utah 1991).

The fourth amendment provides that "[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." U.S. Const. amend. IV.

Consistent therewith, the Utah Supreme Court has held that there are three levels of police-citizen encounters, each of which requires a different degree of justification to be constitutionally permissible.

(1) [A]n officer may approach a citizen at anytime [sic] and pose questions so long as the citizen is not detained against his will;

(2) an officer may seize a person if the officer has an "articulable suspicion" that the person has committed or is about to commit a crime; however, the "detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop;"

(3) an officer may arrest a suspect if the officer has probable cause to believe that an offense has been committed or is being committed.

*State v. Deitman*, 739 P.2d 616, 617–18 (Utah 1987) (per curiam) (quoting *United States v. Merritt*, 736 F.2d 223, 230 (5th Cir.1984)).

█ In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court first articulated the narrow level two exception to allow police officers, in certain circumstances, to make limited intrusions on an individual's personal security based on less than probable cause. The stopping of a vehicle and the consequent detention of its occupants constitute a level two "seizure" within the meaning of the fourth amendment, even if the purpose of the stop is limited and the resulting detention brief. *State v. Sierra*, 754 P.2d 972, 975 (Utah Ct.App.1988).

In the case before us, the trial court and both parties treated the matter as a level two encounter. Such a stop requires that "the officers 'have a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity.'" *State v. Swanigan*, 699 P.2d 718, 719 (Utah 1985) (per curiam) (quoting *Brown v. Texas*, 443 U.S. 47, 51, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1979)); *State v. Carpena*, 714 P.2d 674, 675 (Utah 1986) (per curiam). "Absent reasonable suspicion, evidence derived from the stop is 'fruit of the poisonous tree' and must be excluded." *State v. Baird*, 763 P.2d 1214, 1216 (Utah Ct.App. 1988) (citations omitted).

There is no bright line test for what is, or is not, reasonable suspicion. *Id.* Whether the officer had reasonable suspicion depends on the "totality of the circumstances." *Id.* (citations omitted). The "totality of the circumstances" analysis must be based upon all the circumstances and must "raise a suspicion that *the particular individual being stopped* is engaged in wrongdoing." *United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981) (emphasis added). Put differently, the officers must have a "particularized and objective basis for suspecting criminal activity by the particular person detained." *State v. Sery*, 758 P.2d 935,

941 (Utah Ct.App.1988) (citing *Cortez,* 449 U.S. at 417–18, 101 S.Ct. at 694–95).

Thus, in *Brown v. Texas,* 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979), the United States Supreme Court held that the mere presence of a person in a neighborhood frequented by drug users does not give rise to a reasonable suspicion that such person is involved in criminal conduct. In *Carpena,* the Utah Supreme Court held that a slowly moving vehicle, with out-of-state plates, in a neighborhood in which a number of burglaries had occurred, without more, is insufficient to support reasonable suspicion to justify detention of the occupants thereof. In *State v. Trujillo,* 739 P.2d 85 (Utah Ct.App.1987), a stop based on the lateness of the hour and the high-crime factor in the area was found to be unconstitutional because the officer lacked a reasonable suspicion as to Trujillo, the individual stopped. And, in *Sierra,* we held that no reasonable suspicion existed when such was solely based on out-of-state plates, the occupant's suspicious appearance and his reaction upon observing a police officer.

■ In the instant case, the State argued and the trial court found that:

> evidence showing that the defendant approached the area in a pickup truck, which vehicle was consistent with those types used to deliver chemicals and supplies to the drug laboratory, and the time of day being late in the evening hours, which evidence shows is the time of choice for customers of drug dealers, and defendant's attempts to flee the presence of the officers all combined gave rise to a reasonable and articulable suspicion which justified a temporary seizure of defendant.

We disagree. The mere driving of a pickup truck, on a public road, at 11:50 p.m., is insufficient, without more, to raise reasonable suspicion that its occupant was involved in criminal activity. At the time of the stop, the officers had no other artic-ulable facts to connect Steward, in any way, with the houses being searched or their occupants. They had no more reason to suspect Steward of criminal activity than any other person who may have chosen to drive into the cul-de-sac at that time.

Nor had the officers observed Steward engaging in any unlawful or suspicious activity. The fact that Steward attempted to escape from the area [1] does not sufficiently add to the facts to give rise to reasonable suspicion. Given the scenario of men dressed in camouflage uniforms concealing themselves in the shadows and surprising incoming vehicles, it is no wonder that Steward tried to extricate himself from the situation as quickly as possible. In fact, there is no evidence that Steward was even aware that they were police officers until after an officer had opened the door in order to stop his vehicle. Only at that point did the officers identify themselves. In any case, attempts to avoid contact with the police have been held to be insufficient to justify reasonable suspicion. *State v. Talbot,* 792 P.2d 489, 494 n. 11 (Utah Ct. App.1990).

Accordingly, we hold that the totality of the circumstances surrounding the seizure of Steward does not support a reasonable suspicion that Steward was involved in criminal conduct, and therefore, the initial stop was not justified. Consequently, we find that defendant's motion to suppress the evidence seized as a result of this impermissible seizure should have been granted.[2]

## CONCLUSION

For the foregoing reasons, this case is reversed and remanded for proceedings consistent with this opinion.

BILLINGS and GARFF, JJ., concur.

---

1. The trial court's finding that defendant tried to escape, a fact in dispute, had sufficient support in the record to preclude a determination that it was clear error to so find.

2. Because the case must be reversed on the grounds previously stated, we do not reach defendant's second claim that the subsequent search of his person and truck for weapons violated his rights against unreasonable search and seizure.