**STATE of Utah, Plaintiff and Appellee,**

v.

**Lorenzo HUBBARD, Defendant and Appellant.**

No. 910718-CA.

Court of Appeals of Utah.

Aug. 27, 1993.

Charles F. Loyd, Jr. (argued), Elizabeth Holbrook, Salt Lake Legal Defender Ass'n, Salt Lake City, for appellant.

Jan Graham, State Atty. Gen., Marian Decker (argued), Asst. Atty. Gen., Salt Lake City, for appellee.

Before BILLINGS, GARFF and ORME, JJ.

AMENDED OPINION [1]

GARFF, Judge:

Lorenzo Hubbard pleaded no contest to possession of a controlled substance, a third degree felony, in violation of Utah Code Ann. § 58-37-8 (1990), conditional upon his right to appeal the trial court's denial of his motion to suppress. *See State v. Sery*, 758 P.2d 935, 939-40 (Utah App. 1988). We reverse and remand.

The facts are undisputed. While on patrol the afternoon of July 9, 1989, Officer Bruce Smith of the Salt Lake City Police Department observed a vehicle parked at a local bar bearing a license plate number he recognized from a previous "attempt to locate." [2] The attempt to locate had been issued over two months earlier on May 1, 1989, when an unidentified source reported the vehicle's presence at the scene of a reported theft. Officer Smith verified the vehicle and license plate number by checking a list of attempts to locate that he kept in his vehicle. While he was checking to see whether the attempt to locate was still valid, the vehicle left the premises.[3]

After following the vehicle for a short time and calling for backup, Officer Smith stopped the vehicle to identify its occupants. He asked for and obtained identification from the vehicle's occupants and returned to the squad car. After speaking with dispatch, he learned that the driver had a suspended license, and that Hubbard, who was seated in the front passenger seat of the vehicle, owned the car.

The driver was subsequently arrested, after which Officer Smith approached Hub-

---

1. The Opinion issued herein on June 21, 1993 is replaced by this Amended Opinion.

2. An "attempt to locate" is a report issued to police officers based on information received concerning an alleged crime and any vehicle associated with the alleged crime.

3. According to police policy, attempts to locate are routinely deleted from the computer after seventy-two hours.

bard, asking if he had any narcotics, stolen property or weapons in the vehicle. After obtaining Hubbard's consent, Officer Smith searched the vehicle and in the process, saw Hubbard's partially open wallet lying on the front passenger seat of the vehicle. In examining the wallet, Officer Smith discovered that it contained a controlled substance. Hubbard was then arrested and transported to jail.

After being charged, Hubbard moved to suppress the contraband, arguing that the search and seizure violated the Fourth Amendment of the United States Constitution. Following a hearing, the court denied Hubbard's motion. Hubbard appealed, and this court remanded for more detailed findings, which the trial court entered. Hubbard again appeals.

Although Hubbard raises several issues on appeal, we address the threshold issue of whether Officer Smith had the requisite reasonable suspicion to stop the vehicle. Hubbard does not challenge the trial court's findings of fact. Rather, he challenges the court's application of the law to the findings. We review the ultimate conclusions based on those findings for correctness, according them no deference. *State v. Thurman,* 846 P.2d 1256, 1271 (Utah 1993); *State v. Munsen,* 821 P.2d 13, 14–15 (Utah App.1991), *cert. denied,* 843 P.2d 516 (Utah 1992); *State v. Carter,* 812 P.2d 460, 466 n. 6 (Utah App.1991), *cert. denied,* 836 P.2d 1383 (Utah 1992).

■ Hubbard contends that Officer Smith did not have reasonable suspicion to stop the vehicle. Specifically, he claims that the attempt to locate did not raise reasonable suspicion that he had committed a crime because it was stale, based on hearsay, and vague.[4]

■ Under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and its progeny, an officer may make a temporary investigative stop if there is reasonable suspicion "that criminal activity may be afoot," *id.* at 30, 88 S.Ct. at 1884, or if the officer has reasonable suspicion that the person is wanted for past criminal conduct. *See United States v. Hensley,* 469 U.S. 221, 227, 105 S.Ct. 675, 679–80, 83 L.Ed.2d 604 (1985). "The precise limits on investigatory stops to investigate past criminal activity are more difficult to define." *Id.* at 228, 105 S.Ct. at 680. Nevertheless, we employ the same test as that used in reviewing stops made pursuant to imminent or ongoing crimes. *Id.* "That test, which is grounded in the standard of reasonableness embodied in the Fourth Amendment, balances the nature and quality of the intrusion on personal security against the importance of the governmental interests alleged to justify the intrusion." *Id.*

The governmental interests and the nature of the intrusions may differ when a stop to investigate past criminal activity is involved. Consequently, the "factors in the balance may be somewhat different." *Id.* In recognizing such a difference, the United States Supreme Court stated:

A stop to investigate an already completed crime does not necessarily promote the interest of crime prevention as directly as a stop to investigate suspected ongoing criminal activity. Similarly, the exigent circumstances which require a police officer to step in before a crime is committed or completed are not necessarily as pressing long afterwards. Public safety may be less threatened by a suspect in a past crime who now appears to be going about his lawful business than it is by a suspect who is currently in the process of violating the law. Finally, officers making a stop to investigate past crimes may have a wider range of opportunity to choose the time and circumstances of the stop.

*Id.* at 228–29, 105 S.Ct. at 680. The Court further noted that "[p]articularly in the context of felonies or crimes involving a threat to public safety,[5] it is in the public

---

4. Hubbard waived his claims regarding hearsay and vagueness because he did not present them to the trial court. *See State v. Carter,* 707 P.2d 656, 660–61 (Utah 1985); *State v. Rochell,* 850 P.2d 480, 484 n. 3 (Utah App.1993).

5. There is no indication in the record or on appeal that the theft underlying the attempt to locate could or would be charged as a felony.

interest that the crime be solved and the suspect detained as promptly as possible." *Id.* at 229, 105 S.Ct. at 680 (footnote added). As a result, the governmental interests at stake in such circumstances "outweigh the individual's interest to be free of a stop and detention that is no more extensive than permissible in the investigation of imminent or ongoing crimes." *Id.*

However such is not the case here. Officer Smith knew he was not investigating an ongoing crime. Neither exigent circumstances nor a need for immediate action because of a threat to public safety existed. Rather, Officer Smith stopped the vehicle based on an attempt to locate issued over two months earlier, which had been deleted from the computer.[6] Because of the stale attempt to locate, Officer Smith lacked the requisite reasonable suspicion to justify the stop. The trial court therefore erred in denying Hubbard's motion to suppress. We do not address the remaining contentions, including the State's arguments regarding attenuation, because we find such contentions to be without merit. *See State v. Carter,* 776 P.2d 886, 888–89 (Utah 1989). Accordingly, we reverse and remand for further proceedings consistent with this opinion.

BILLINGS, and ORME, JJ., concur.

---

**6.** There are sound reasons underlying the policy of deleting an attempt to locate from the computer after seventy-two hours. Detectives may have already checked the report and cleared the suspect(s) or found the information not credible. If the report is valid, prompt police action should be taken to locate the owner of the reported vehicle and investigate the alleged crime. The State, in the instant case, does not contend that the police were unable to locate Hubbard prior to making the stop. In fact, the police never sought an interview with Hubbard at his home although apparently such an interview could have been arranged. *Cf. United States v. Hensley,* 469 U.S. 221, 234, 105 S.Ct. 675, 683, 83 L.Ed.2d 604 (1985) ("A brief stop and detention at the earliest opportunity after the suspicion arose is fully consistent with the principles of the Fourth Amendment.").