STATE of Utah, Plaintiff and Appellant,

v.

**Wayne D. POTTER, Defendant and Appellee.**

No. 920614–CA.

Court of Appeals of Utah.

Oct. 19, 1993.

Jan Graham, J. Kevin Murphy and Todd A. Utzinger, Salt Lake City, for appellant.

Mark T. Ethington, Murray, for appellee.

Before BILLINGS, GREENWOOD and ORME, JJ.

BILLINGS, Presiding Judge:

The State appeals the trial court's order of dismissal based on defendant Wayne Potter's successful motion to suppress for lack of reasonable suspicion. We affirm.

### FACTS

" 'Because a determination of the reasonableness of police conduct is highly factual in nature, we review the facts in detail.' " *State v. White*, 856 P.2d 656, 657 (Utah App.1993) (quoting *State v. Trujillo*, 739 P.2d 85, 86 (Utah App. 1987)). On February 16, 1991, Emery County Sheriff's Deputy Gayle Jensen stopped Leon Sandstrom for driving under the influence. Mr. Sandstrom was obviously intoxicated. In an effort to obtain more favorable treatment, he pointed to the nearby trailer home of Devon Potter, defendant's brother, and told Deputy Jensen there were several people inside smoking marijuana. Other police officers were summoned to the scene. Based on the information from Mr. Sandstrom and information from an ongoing investigation of the home, the officers sought a search warrant for Devon Potter's home. Narcotics detective Tom Harrison told several officers, including Utah State Trooper Jeff Horrocks and Emery County Sheriff's Deputy J.D. Mangum, to watch Devon Pot-

ter's home pending the issuance of a search warrant.

During this surveillance, the officers saw people peering out of the home's windows. Trooper Horrocks observed a person exit a white Nissan and enter the house. The person remained for about three minutes, left the house and drove away. Deputy Mangum directed Trooper Horrocks to stop the Nissan. Trooper Horrocks then stopped the vehicle with the intent to detain the occupants until receiving further instructions.

After stopping the Nissan, Trooper Horrocks immediately recognized the driver as defendant Wayne Potter. Horrocks had known him for several years and knew he had been previously arrested for illegal drug possession. Horrocks believed defendant to be dangerous and also knew he frequently carried a weapon.

Concerned for his safety, Horrocks asked defendant and his passengers if they had any weapons. He then directed them to get out of the Nissan and empty their pockets. Defendant removed a pistol from his back pocket and placed it on the trunk of the Nissan.

Horrocks arrested defendant for unlawful possession of a concealed weapon. Horrocks then searched defendant incident to the arrest. This search produced a "small plastic bag containing a green leafy material that appeared to be marijuana." Horrocks also retrieved from defendant a small container which contained a white powdery residue, apparently cocaine.

Based upon these facts, the trial court granted defendant's motion to suppress the evidence obtained in the search, ruling Officer Horrocks had no reasonable suspicion to stop the vehicle. Then, on defendant's motion, the trial court dismissed the prosecution. Contending that the trial court erroneously applied a probable cause rather than a reasonable suspicion standard and that there were sufficient facts to support a *Terry* reasonable suspicion stop,[1] the State appeals.

## STANDARD OF REVIEW

The State does not challenge the trial court's findings of fact but argues the court's error was created by a misapprehension of the law. This court recently reviewed the standard we apply when evaluating a trial court's legal conclusion of whether police officers had reasonable suspicion to stop a vehicle. *See State v. Hubbard,* 861 P.2d 1053, 1053 (Utah App.1993). In *Hubbard* we noted, "Hubbard does not challenge the trial court's findings of fact. Rather he challenges the court's application of the law to the findings. We review the ultimate conclusion [of reasonable suspicion] based on those findings for correctness, according [it] no deference." *Id.* See also *State v. Thurman,* 846 P.2d 1256, 1271 (Utah 1993); *State v. Munsen,* 821 P.2d 13, 14–15 (Utah App.1991), *cert. denied,* 843 P.2d 516 (Utah 1992); *State v. Carter,* 812 P.2d 460, 466 n. 6 (Utah App. 1991), *cert. denied,* 836 P.2d 1383 (Utah 1992). Therefore, we review for correctness the trial court's conclusion that there was no reasonable suspicion to stop the vehicle. *Id.*[2]

1. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

2. We note that a plurality opinion of this court has expressed a different view of the appropriate standard of review for a trial court's ultimate determination of reasonable suspicion. *See State v. Rochell,* 850 P.2d 480, 484 (Utah App.1993) (Bench, J., concurring in the result). This opinion relies on *State v. Mendoza,* 748 P.2d 181, 183 (Utah 1987), an earlier supreme court opinion. The section on standard of review in *Rochell* is dicta and thus we do not feel constrained to follow it under the doctrine of stare decisis.

Furthermore, we are persuaded that *State v. Thurman,* 846 P.2d 1256 (Utah 1993) compels the adoption of a bifurcated approach where we review the ultimate determination of reasonable suspicion for error. *Thurman* did not limit its analysis of the allocation of responsibility between trial and appellate courts to voluntary consent but spoke in more general terms. *See Thurman,* 846 P.2d at 1265–72. We see no analytical distinction between a trial court's determination of voluntary consent and reasonable suspicion for purposes of appellate review.

## REASONABLE SUSPICION

The trial court, in ruling on the motion to suppress, stated:

> Officer Horrocks had a right to rely on the information given to him by other officers as a basis to support his reasonable suspicion, but only if the basis for the matters relayed were also based on articulable facts. Officer Horrocks was told by Deputy Mangum that the trailer home that they were observing from about one-half block away was under surveillance while a search warrant was being secured. He further informed him that an informant, who had just previously been arrested for drunk driving, had told the officers that there was a pot party going on in the trailer and that marijuana was present.
>
> Horrocks further stated that while observing the trailer he saw a person get out of a car near the trailer, go to the trailer, and then go to the car, get into the car and begin to drive away. At that point, Officer Mangum instructed Officer Horrocks to stop the car and detain the occupants pending the arrival of the search warrant.
>
> Officer Horrocks followed these instructions and stopped the vehicle with the intent to detain its occupants pending the arrival of the search warrant, or pending further instructions. Without any other facts that would indicate any illegal activity on the part of the occupants of the car, the vehicle was stopped.
>
> The Defendant was not in the house trailer when the officers entered it to secure the premises pending the receipt of a search warrant, and he was not identified to them by the informant as being in the trailer when the informant said he observed marijuana or that a pot party was in progress.
>
> If there was reasonable cause to believe that illegal activity was going on inside the trailer at the time, there were no articulable facts connecting the Defendant with such activity other than his brief appearance on the premises.

The State argues the trial judge misapprehended the degree of proof necessary to stop the car, claiming the judge understood it to be probable cause. The State based this argument on language in the trial court's ruling denying the State's motion to reconsider: "[N]o matter how you consider the facts in this case, they do not establish reasonable cause to believe that the Defendant was committing any crime or had committed any public offense at this time and place that would justify his apprehension and detention." We conclude the trial judge merely misstated himself in the ruling which denied the State's motion to reconsider. The trial judge's oral and written rulings on the motion to suppress clearly demonstrate the trial judge applied the appropriate legal standard and determined there was no reasonable suspicion to stop the car. The court's written conclusions provide:

> 2. There was nothing in what Officer Horrocks knew or in what was conveyed to him that would create *reasonable suspicion* of illegal conduct upon the part of the Defendant. There was nothing at the time that any of the deputies of the Emery County Sheriff's Office could factually articulate that would give rise to *reasonable suspicion* that the Defendant had committed or was committing a crime except his brief appearance on the premises.
>
> . . . .
>
> 4. Because there was no *reasonable suspicion* to stop Defendant's vehicle for the purpose of detaining him, the Defendant's constitutional rights as set forth in the Fourth and Fourteenth Amendments to the United States Constitution, and Article I Section 14 of the Utah Constitution prohibiting unreasonable searches and seizures [were] violated, and Defendant's Motion to Suppress should be granted. (Emphasis added).

We proceed to determine whether the facts as found by the trial court established reasonable suspicion to stop defendant. This court reiterated the legal standard for reasonable suspicion to stop a vehicle in

*State v. Sykes,* 840 P.2d 825 (Utah App. 1992).

When a police officer stops a vehicle, a "seizure" occurs, giving rise to Fourth Amendment protections.

To pass muster under the Fourth Amendment, the seizure must be based on articulable facts which, together with rational inferences drawn from them, would lead a reasonable person to conclude defendant had committed or was about to commit a crime.

*Id.* at 827 (citations omitted).[3]

■ There is no bright line test for determining if reasonable suspicion exists. *State v. Steward,* 806 P.2d 213, 215 (Utah App.1991). Rather, courts must look at the totality of the circumstances. *United States v. Sokolow,* 490 U.S. 1, 8, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989). *Accord Sykes,* 840 P.2d at 827; *Steward,* 806 P.2d at 215.

The facts at hand are strikingly similar to those in *Sykes,* where we concluded the officers did not have reasonable suspicion to justify stopping the defendant. In *Sykes,* the police had been watching a house in Salt Lake City. The surveillance was being conducted because of complaints about suspicious activity at the house, information from a confidential informant, and the observing officer's undercover purchase of cocaine in the general area. After the officer had been observing the house for about fifteen minutes the defendant drove up, parked a car in the driveway, entered the house, stayed for about three minutes, returned to her car and drove off. The officer followed the defendant in his car and ultimately stopped her, at which time he discovered there were several warrants for her arrest. The officer then searched the car and found a small amount of cocaine. The trial court denied the defendant's motion to suppress the evidence. Holding there was no reasonable suspicion

to stop the defendant, this court reversed. *Sykes,* 840 P.2d at 828. This court held:

[T]he facts do not support a reasonable suspicion that defendant was engaged in criminal activity. The only facts articulated by Deputy Stephens were that (1) the neighbors had complained about individuals entering and leaving the house at all hours; (2) Deputy Stephens previously had purchased cocaine in the general area; (3) there was unspecified information from a confidential informant; (4) there was an ongoing investigation of the house; and (5) defendant drove up to the house, entered it and left shortly thereafter. None of these factors, either singly or in the aggregate, necessarily indicate wrongdoing as opposed to innocent actions by defendant.

At the time of the arrest, any connection between defendant and illegal activity was purely speculation.... Defendant's single visit does not link her to any drug dealers. She could have easily been at the house to visit someone who was not there, and so left quickly.

*Id.* at 828–29.

Similarly, in *Steward,* this court held the defendant was improperly detained while driving down a cul-de-sac where three houses were being searched. *Steward,* 806 P.2d at 216. This court observed that the defendant could have been an innocent person driving past on a public street and that nothing connected him to the suspected criminal activity. *Id.*

■ Applying these analogous reasonable suspicion cases, we conclude the trial court was correct in concluding there was no reasonable suspicion to justify stopping defendant. An officer must be able to articulate some unlawful or suspicious behavior connecting the detainee to the suspected criminal activity. The informant described the drug usage at a time prior to defendant's arrival and no other facts con-

---

**3.** Utah has codified the reasonable suspicion standard as follows:

A peace officer may stop any person in a public place when he has reasonable suspicion to believe he has committed or is in the

act of committing or is attempting to commit a public offense and may demand his name, address and an explanation of his actions. Utah Code Ann. § 77–7–15 (1990).

nected defendant with the suspected drug activity at the house.

## CONCLUSION

Because there were no articulable facts that defendant had been engaged, or was about to engage, in criminal conduct, the officer did not have reasonable suspicion on which to base his stop of the vehicle. Therefore, we affirm the trial court's grant of defendant's motion to suppress and the order of dismissal.

GREENWOOD and ORME, JJ., concur.