2002 UT App 235

**STATE of Utah, Plaintiff and Appellant,**

v.

**Dean Allen MOGEN, Defendant and Appellee.**

**No. 20010207–CA.**

Court of Appeals of Utah.

July 11, 2002.

---

Mark L. Shurtleff, Atty. Gen., and Joanne C. Slotnik, Asst. Atty. Gen., Salt Lake City, for Appellant.

Wesley M. Baden, Uintah County Legal Defender, Vernal, and Richard P. Mauro, Salt Lake City, for Appellee.

Before Judges BENCH, GREENWOOD, and THORNE.

## OPINION

GREENWOOD, Judge:

¶ 1 The State appeals an order dismissing one count of Possession of a Controlled Substance (Methamphetamine), a third degree felony, in violation of Utah Code Ann. § 58–37–8(2)(a)(i) (2000); and one count of Possession of Drug Paraphernalia, a class B misdemeanor, in violation of Utah Code Ann. § 58–37a–5(1) (2000). The State argues that the trial court erred in granting Defendant's Motion to Suppress, determining that Defendant was still seized within the meaning of the Fourth Amendment when the officer searched Defendant's truck and discovered illegal drugs and contraband. We affirm.

## BACKGROUND

¶ 2 Shortly after midnight on August 22, 2000, Uintah County Deputy Sheriff Troy Slaugh (Officer Slaugh) was patrolling a rural road in the area of Jensen, Utah, when he noticed a large Dodge flatbed truck speeding in the opposite direction. Officer Slaugh made a u-turn and activated his overhead emergency lights, pulling the truck over. Keeping his overhead lights on, Officer Slaugh approached the truck and asked Defendant for his identification. After receiving Defendant's driver license, Officer Slaugh returned to his vehicle to do a routine driver license and warrants check. After the check came back clear, Officer Slaugh returned Defendant's driver license and issued him a verbal warning for speeding.[1]

¶ 3 Officer Slaugh then took a couple of steps toward his patrol car, turned around, and again made contact with Defendant. Defendant testified that after Officer Slaugh returned his identification, the officer stepped back and stared at him for a few seconds, as if the officer had something more to say. Officer Slaugh then stated to Defendant that he "would be interested in knowing if there is any illegal guns, drugs, knives or bombs in his vehicle, [and] asked him if he would mind if I took a look." Defendant agreed to the search. Officer Slaugh admitted he had no particular reason for turning around and asking Defendant to consent to a search other than he noticed that Defendant "had been quite fidgety while [he] was dealing with him."

¶ 4 Upon searching Defendant's truck, Officer Slaugh found methamphetamine in an Advil bottle in the truck's ashtray. Officer Slaugh placed Defendant under arrest. Officer Slaugh also found a small torch under the front passenger seat. Defendant was subsequently charged with possession of a controlled substance and possession of drug paraphernalia.

¶ 5 Defendant filed a motion to suppress the drugs and paraphernalia. After an evidentiary hearing, the trial court granted Defendant's motion and the evidence was suppressed. The State then filed a motion to dismiss, which the trial court granted. This appeal followed.

## ISSUE AND STANDARD OF REVIEW

¶ 6 The sole issue before us is whether the trial court erred in granting Defendant's motion to suppress the evidence as having been seized in violation of the Fourth Amendment.

"The factual findings underlying a trial court's decision to grant or deny a motion to suppress evidence are reviewed under the deferential clearly-erroneous standard,

---

1. Officer Slaugh testified that he then told Defendant that he was free to go, but Defendant denied that he was told he was free to go. The trial court did not make a finding regarding whether the officer had communicated to Defendant that he was free to go, concluding it had "an insufficient record to make a finding" regarding this issue.

but the legal conclusions are reviewed for correctness, with a measure of discretion given to the trial judge's application of the legal standard to the facts."

*State v. Giron,* 943 P.2d 1114, 1116 (Utah Ct.App.1997) (quotations, alteration and citation omitted).

## ANALYSIS

■ ¶ 7 The State argues that the trial court erred in determining that Defendant was still seized within the meaning of the Fourth Amendment after the officer, who had stopped Defendant for speeding, issued a verbal warning, returned Defendant's documents, and stepped back from the vehicle. Defendant argues that he was not free to terminate the encounter with the officer; therefore, he remained seized under the Fourth Amendment when the search of the truck occurred.

¶ 8 The trial court made the following findings of fact and conclusions of law relevant to our analysis:

## FINDINGS OF FACT

. . . .

4. Deputy Slaugh then returned to the driver side of the defendant's vehicle and returned to the defendant his license and any other papers the defendant had given him. Deputy Slaugh gave the defendant a warning for the speeding violation and then turned and took a couple of steps back toward his vehicle.

5. At this time Deputy Slaugh's overhead lights were still flashing.

6. Within a few seconds Deputy Slaugh stepped back to the driver's window and asked the defendant if he had, "any guns, drugs, knives or bombs" in the vehicle. Defendant replied negatively. Deputy Slaugh then asked the defendant for permission to look.

7. The defendant agreed to allow Deputy Slaugh to look in his vehicle.

## CONCLUSIONS OF LAW

. . . .

2. Based on facts of this case, the defendant did not reasonably feel comfortable in leaving, and the court finds that the natural inference is that the defendant was still being detained when the deputy asked his permission to search the defendant's vehicle.

3. The defendant voluntarily consented to a search of the vehicle he was driving, however, the consent was obtained while the defendant was still within the arena of the detention of the traffic stop.

4. Based on the case law for Utah, an officer does not have the right to ask for consent to search a vehicle during a traffic stop unless there is an independent constitutionally permitted basis for either the request or the search.

¶ 9 Based on the testimony presented at the suppression hearing, the trial court determined that there was an insufficient record from which to make a finding concerning whether the officer said to Defendant that he was free to go.

■ ¶ 10 Utah law governing traffic stops is that

[a]n officer conducting a routine traffic stop may request a driver's license and vehicle registration, conduct a computer check, and issue a citation. However, once the driver has produced a valid license and evidence of entitlement to use the vehicle, "he must be allowed to proceed on his way, without being subject to further delay by police for additional questioning." Any further temporary detention for investigative questioning after the fulfillment of the purpose for the initial traffic stop is justified under the fourth amendment only if the detaining officer has a reasonable suspicion of serious criminal activity. The detaining officer must be able to articulate a particularized and objective basis for their suspicions that is drawn from the totality of circumstances facing them at the time of the seizure.

*State v. Robinson,* 797 P.2d 431, 435 (Utah Ct.App.1990) (citations omitted).

¶ 11 The State admits that the officer did not have reasonable suspicion to justify a search, but essentially argues that this case is not governed by the standard cited above because once the officer told Defendant he was free to go and stepped back from the vehicle towards his police car, the seizure ended. Therefore, when the officer turned around and again approached Defendant, the encounter had de-escalated to a level-one stop and reasonable suspicion to search was not necessary.[2] Defendant argues that he did not feel free to go because the officer appeared to have something further to say, was standing close to his truck, making it difficult to pull away safely, and the officer's overhead emergency lights were still flashing.

¶ 12 In determining whether Defendant remained seized within the meaning of the Fourth Amendment, Utah courts have followed the totality of the circumstances standard:

> Not every encounter between a police officer and a citizen is a seizure. *Florida v. Bostick,* 501 U.S. 429, 437, 111 S.Ct. 2382, 2387 [115 L.Ed.2d 389] (1991). A person is seized under the Fourth Amendment when, considering the totality of the circumstances, the police conduct would have communicated to a reasonable person that the person was not free to decline the officer's requests or otherwise terminate the encounter and go about his or her business. *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877 [64 L.Ed.2d 497] (1980).

*State v. Higgins,* 884 P.2d 1242, 1244 (Utah 1994); *see also State v. Justesen,* 2002 UT App 165, ¶ 16, 47 P.3d 936 (holding that activation of police overhead lights alone was insufficient under the totality of circumstances to escalate the encounter to a level-two stop); *State v. Hansen,* 2000 UT App 353, ¶ 16, 17 P.3d 1135 (holding that given the totality of circumstances Defendant remained seized for Fourth Amendment purposes after

the officer returned Defendant's documentation), *cert. granted,* 26 P.3d 235; *State v. Patefield,* 927 P.2d 655, 659 (Utah Ct.App. 1996) (applying totality of circumstances standard in determining whether officer exceeded scope of traffic stop).

¶ 13 However,

> [o]nce a person is seized for Fourth Amendment purposes, the seizure does not cease simply because the police formulate an uncommunicated intention that the seized person may go his or her way. For the seizure to end, it must be clear to the seized person, either from the words of an officer or from the clear import of the circumstances, that the person is at liberty to go about his or her business.

*Higgins,* 884 P.2d at 1244 (citation omitted).

¶ 14 Other courts that have addressed similar issues have followed the same totality of the circumstances approach. *See United States v. Elliott,* 107 F.3d 810, 814 (10th Cir.1997) (evaluating whether encounter following a traffic stop was consensual under totality of the circumstances test of whether objective circumstances would demonstrate to reasonable person that he is no longer subject to detention by police); *United States v. Werking,* 915 F.2d 1404, 1408 (10th Cir.1990) (same); *Commonwealth v. Strickler,* 563 Pa. 47, 757 A.2d 884, 899 (2000) (same). In beginning their analyses, courts in other jurisdictions have determined that before a detention can end and a consensual encounter begin, an officer must return a driver's documentation. *See Werking,* 915 F.2d at 1408–09 (after officer has returned driver license and registration, questions concerning drugs and weapons, or request for voluntary consent to search, may become "an ordinary consensual encounter between a private citizen and a law enforcement official."); *Elliott,* 107 F.3d at 814 (same); *People v. Cervantes–Arredondo,* 17 P.3d 141, 148 (Colo. 2001) (remanding back to trial court for determination of when defendant's documents

---

**2.** "Under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868 [20 L.Ed.2d 889] (1968), and its progeny, there are three levels of police-citizen encounters, each requiring a different degree of justification under the Fourth Amendment. The first level occurs when an officer approaches and

questions a [person]. An officer may stop and question a person at any time so long as that person 'is not detained against his [or her] will.' "

*Salt Lake City v. Smoot,* 921 P.2d 1003, 1006 (Utah Ct.App.1996) (citations omitted).

were returned and for finding concerning nature of interrogation).

¶ 15 However, the mere return of the driver's documentation, alone, is not enough to show that the detention has de-escalated to a level-one, voluntary encounter. *See Elliott*, 107 F.3d at 814 (concluding that although officer must return a driver's documentation before detention can end, return of driver's documentation is not always sufficient to demonstrate that encounter has become consensual); *Werking*, 915 F.2d at 1408 (concluding that return of driver's documents will not end detention if driver "has an objective reason to believe that he was not free to end his conversation with the law enforcement official and proceed on his way.").

¶ 16 In reviewing the trial court's decision in this case, we "consider the facts in a light most favorable to the trial court's determination," *Patefield*, 927 P.2d at 657, and defer to the trial court's assessment of witness credibility. *See State v. Vigil*, 815 P.2d 1296, 1299 (Utah Ct.App.1991) ("[T]he trial judge is in the best position to sift witness credibility and the accuracy of conflicting evidence." (Citation omitted)). We also accord the trial court some discretion in applying the law to the facts. *See State v. Pena*, 869 P.2d 932, 939 (Utah 1994) (providing trial court should be accorded a "measure of discretion" when applying the law to the facts). Furthermore, the State has the burden of establishing that a warrantless search of a citizen did not violate the Fourth Amendment. *See State v. Menke*, 787 P.2d 537, 543 (Utah Ct.App.1990).

¶ 17 The evidence in this case presents a close question. The trial court properly considered the totality of the circumstances in determining whether the officer's conduct would have communicated to a reasonable person that he was not free to leave once the officer returned his identification. The officer kept his overhead emergency lights on during the entire encounter with Defendant. The officer obtained Defendant's driver license on which the officer ran a computer check that revealed no outstanding warrants. The officer then returned Defendant's license and issued him a verbal warning for speeding. After receiving his identification, De-

fendant testified that the officer stared at him for a few seconds which made Defendant feel that the officer still had something more he wished to say. The officer then took a few steps towards his car, turned around and stated to Defendant that he "would be interested in knowing if there is [sic] any illegal guns, drugs, knives or bombs in his vehicle, [and] asked him if he would mind if [the officer] took a look." Defendant then gave permission for the officer to search his truck.

¶ 18 The trial court then concluded that given the totality of the circumstances, Defendant remained seized within the meaning of the Fourth Amendment when the officer asked to search his truck. Applying the appropriate deference to the trial court's assessment of the evidence, we conclude that the trial court's findings were not clearly erroneous and that the court did not err in applying the law to these facts.

## CONCLUSION

¶ 19 Because we defer to the trial court's findings of fact and application of the law to those facts, we conclude that the trial court did not err in determining that Defendant remained seized within the meaning of the Fourth Amendment. Therefore, we affirm the trial court's grant of Defendant's Motion to Suppress the evidence obtained from the search of his vehicle.

¶ 20 WE CONCUR: RUSSELL W. BENCH and WILLIAM A. THORNE JR., Judges.