2002 UT App 322

STATE of Utah, Plaintiff and Appellee,

v.

Gerald Doug FRIDLEIFSON, Defendant and Appellant.

No. 20010392–CA.

Court of Appeals of Utah.

Oct. 3, 2002.

Linda M. Jones and Otis Sterling III, Salt Lake Legal Defender Ass'n, Salt Lake City, for Appellant.

Mark L. Shurtleff, Atty. Gen., and Christine Soltis, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before BILLINGS, Associate P.J., GREENWOOD, and ORME, JJ.

## OPINION

GREENWOOD, Judge:

¶ 1 Defendant challenges his conviction for possession of a controlled substance, a third degree felony, in violation of Utah Code Ann. § 58–37–8(2)(a)(i) (Supp.2002). Specifically, Defendant claims that the police lacked reasonable articulable suspicion to detain him. We affirm.

## BACKGROUND

¶ 2 Because determining the reasonableness of police conduct is fact sensitive, we describe the facts leading to the seizure of evidence in this case in detail. *See State v. Potter*, 863 P.2d 40, 40 (Utah Ct.App.1993).

¶ 3 For over a year Officers Larson and Washington and other Salt Lake City police officers periodically conducted surveillance of an apartment believed by them to be a drug house. As a result of this investigation, the officers had arrested several drug purchasers at the drug house. Based on the officers' observations of the drug house traffic and the resulting arrests of drug buyers, the officers identified a pattern whereby buyers would enter the stairwell that led to only the suspect apartment and spend approximately five minutes at the bottom of the stairwell where they would conduct a drug transaction.

¶ 4 Around 3:00 p.m. on January 11, 1999, Officers Larson and Washington were arresting a drug suspect outside the drug house after observing the suspect follow the above mentioned pattern. While the officers were arresting the suspect, Defendant arrived. The officers told Defendant that they "were investigating drug activity there and that if he were there to purchase drugs now would be a good time to leave." Defendant said, "Thank you," and left.

¶ 5 At about 8:00 p.m. that same day, Officers Larson and Washington observed Defendant return to the drug house after parking his truck farther away than he had earlier that day. Defendant left the truck's motor running and descended the stairwell. He was out of the officers' sight for approximately five minutes. When Defendant emerged from the stairwell, Officers Larson

and Washington, who were dressed in bright yellow police jackets, asked if they could speak to Defendant. Defendant turned abruptly and continued to his truck, slightly increasing his pace. The officers then pushed Defendant up against his truck, at which point Defendant began to flail his elbows and threw an object that was later identified as a cocaine twist.

¶ 6 After Defendant was charged with possession of a controlled substance, Defendant sought to suppress the cocaine twist claiming that the police officers lacked reasonable articulable suspicion to stop him. The trial court denied Defendant's motion. A jury convicted Defendant and this appeal followed.

## ISSUES AND STANDARD OF REVIEW

■ ¶ 7 Defendant argues the trial court erred in denying his motion to suppress, claiming that some of its findings of fact are not supported by the evidence. We review a trial court's findings of fact for clear error. *State v. Mogen*, 2002 UT App 235, ¶ 6, 52 P.3d 462. Defendant also argues that the police lacked reasonable articulable suspicion to engage him in a level two stop. Determination of " 'whether a set of facts supports a reasonable articulable suspicion is a question of law that we review for correctness.' " *Salt Lake City v. Ray*, 2000 UT App 55, ¶ 8, 998 P.2d 274 (quoting *State v. Preece*, 971 P.2d 1, 4 (Utah Ct.App.1998)). However, we conduct our review " 'with a measure of discretion given to the trial judge's application of the legal standard to the facts.' " *Mogen*, 2002 UT App 235 at ¶ 6, 52 P.3d 462 (quoting *State v. Giron*, 943 P.2d 1114, 1116 (Utah Ct.App.1997)).

## ANALYSIS

■ ¶ 8 The parties agree that a level two stop occurred when the officers pushed Defendant against his truck. A level two stop occurs when, in an encounter between a citizen and law enforcement officers, " 'a reasonable person, in view of all the circumstances, would believe he or she is not free to leave.' " *State v. Ray*, 2000 UT App 55, ¶ 11,

998 P.2d 274 (quoting *State v. Jackson*, 805 P.2d 765, 767 (Utah Ct.App.1990)). Such a detention is constitutionally permissible when the officer has reasonable suspicion to believe a person "has committed or is in the act of committing or is attempting to commit a public offense." Utah Code Ann. § 77–7–15 (1999); *see also United States v. Arvizu*, 534 U.S. 266, ——, 122 S.Ct. 744, 750, 151 L.Ed.2d 740 (2002).

> [A] level two stop ... must be supported by reasonable suspicion [or it] violates the Fourth Amendment to the United States Constitution. While the required level of suspicion is lower than the standard required for probable cause to arrest, the same totality of facts and circumstances approach is used to determine if there are sufficient specific and articulable facts to support reasonable suspicion. In determining whether this objective standard has been met, the focus necessarily centers upon the facts known to the officer immediately before the stop.

*Ray*, 2000 UT App 55 at ¶ 18, 998 P.2d 274 (citations and quotations omitted) (alterations in original).

## I. Findings of Fact

■ ¶ 9 Defendant challenges several factual findings in the trial court's memorandum decision supporting its reasonable suspicion determination. However, when a memorandum decision calls for the preparation of findings of fact to formalize the court's decision, and such findings are then prepared and signed by the court, we look not to the trial court's memorandum decision but to the signed and entered Findings of Fact and Conclusions of Law. *See Bennion v. Hansen*, 699 P.2d 757, 760 (Utah 1985) ("Until a court files its findings of fact, no decision has been rendered or final ruling made. A judge is free to change his or her mind on the outcome of a case until a decision is formally rendered."). We find ample evidence in the suppression hearing to support each of the findings of fact, including evidence that Defendant increased his pace after the officers spoke to him.[1] *See State v. Mogen*, 2002 UT

---

1. The State concedes that the trial court lacked evidence to support its finding that the arrest of the drug suspect, when Defendant first arrived, occurred *in* the drug house instead of *outside* the

drug house. We believe that this error was insignificant and does not undermine the decision that reasonable suspicion existed.

App 235,¶16, 52 P.3d 462 (stating that we defer to the trial court's credibility determinations). Accordingly, there is sufficient evidence on the record to support the trial court's findings of fact.

## II. Reasonable Suspicion

■■■ ¶ 10 Defendant also argues that under the totality of the circumstances, the facts do not support a conclusion of reasonable suspicion. Defendant argues that the facts on which the trial court relied to find reasonable suspicion can also be used to describe innocent conduct. However, "[a] determination that reasonable suspicion exists ... need not rule out the possibility of innocent conduct." *United States v. Arvizu*, 534 U.S. 266, ——, 122 S.Ct. 744, 753, 151 L.Ed.2d 740 (2002). Trial courts should analyze the totality of the circumstances and consider the experience and training of police officers when determining whether reasonable suspicion exists—not whether each discrete fact constitutes reasonable suspicion by itself. *See id.* at ——, 122 S.Ct. at 750–51.

¶ 11 Defendant further argues that this case is similar to and controlled by *State v. Sykes*, 840 P.2d 825 (Utah Ct.App.1992) and *State v. Potter*, 863 P.2d 40 (Utah Ct.App. 1993), in which this court held that the police lacked reasonable suspicion to detain the defendants. In *Sykes*, the defendant entered a house that was under police surveillance as a drug house. She left after about three minutes and drove away in her car. The police stopped her. This court held that there was not reasonable suspicion of illegal activity because "any connection between defendant and illegal activity was purely speculation .... defendant's mere presence in an area suspected to harbor drug activity does not give rise to reasonable suspicion [and] [d]efendant's single visit does not link her to any drug dealers." *Sykes*, 840 P.2d at 828–29.

¶ 12 In *Potter*, officers were waiting for a search warrant to search a home where marijuana was purportedly being used. As they waited, the defendant drove up and entered the home. He left after about three minutes and was detained by police officers. This court affirmed the trial court's grant of a motion to suppress, stating that the drug usage at the home took place "at a time prior to defendant's arrival and no other facts connected defendant with the suspected drug activity at the house." *Potter*, 863 P.2d at 43–44.

¶ 13 As acknowledged by this court in *Potter*, "[t]here is no bright line test for determining if reasonable suspicion exists. Rather, courts must look at the totality of the circumstances." *Id.* at 43. We conclude that the facts of this case distinguish it from *Sykes* and *Potter*.

■■■ ¶ 14 Defendant was seen near the drug house a few hours before he was arrested. Defendant knew the house was the site of illegal drug transactions because the police told him to leave if he was there to purchase drugs. Defendant said, "Thank you," and left. Later that night, Defendant returned to the known drug house, parked farther away from the drug house than he had earlier in the day, left his motor running, and spent approximately five minutes in the drug house's stairwell. The police suspected that Defendant had engaged in a drug transaction based upon their observation that five minutes was the norm for a drug purchase at this particular drug house. Upon leaving the stairwell, Defendant had an unobstructed view of the two police officers who were wearing bright yellow police jackets. While facing Defendant, one officer told Defendant that they wanted to talk to him. Instead of stopping, Defendant turned and proceeded to his truck. While none of these facts may establish reasonable suspicion individually, viewed together, they present a different picture. Furthermore, unlike *Potter* and *Sykes*, Defendant in this case was observed by police visiting the drug house twice in one day and he undisputably knew it was a suspected drug house, at least as of the second visit. Added to these facts, Defendant parked in a different, less conspicuous location on his second visit, left the motor running, and ignored police requests to speak to him. We therefore conclude the trial court did not err in determining there was reasonable suspicion sufficient to warrant further police investigation.

## CONCLUSION

¶ 15 In sum, Defendant has failed to show that the trial court clearly erred in its factual

determinations or that it incorrectly applied the law in determining that reasonable suspicion existed. Accordingly, we affirm.

¶ 16 WE CONCUR: JUDITH M. BILLINGS, Associate Presiding Judge, and GREGORY K. ORME, Judge.