2004 UT App 1

**STATE of Utah, Plaintiff and Appellee,**

v.

**David Roger MARKLAND, Defendant and Appellant.**

No. 20020965–CA.

Court of Appeals of Utah.

Jan. 2, 2004.

Linda M. Jones and Nisa J. Sisneros, Salt Lake City, for Appellant.

Mark L. Shurtleff, Atty. Gen., and Jeffrey S. Gray, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before BENCH, Associate P.J., DAVIS, and GREENWOOD, JJ.

MEMORANDUM DECISION

GREENWOOD, Judge:

¶1 David Markland, Defendant, was charged with possession of methamphetamine, a third degree felony, and with possession of marijuana, a class B misdemeanor. *See* Utah Code Ann. § 58–37–8(2)(a)(i) (2002). Defendant moved to suppress the evidence, arguing that his detention was not supported by reasonable suspicion and the ensuing search was therefore illegal. The trial court denied the motion to suppress and Defendant petitioned for an interlocutory appeal, which this court granted. The issue before this court is whether the trial court properly denied Defendant's motion to suppress. We reverse.

¶2 Defendant argues that the State failed to establish a reasonable suspicion to support the level two detention. "[W]hether a particular set of facts gives rise to reasonable suspicion is a question of law, which is reviewed for correctness." *State v. Chapman*, 921 P.2d 446, 450 (Utah 1996) (citing *State v. Pena*, 869 P.2d 932, 939 (Utah 1994)). "However, we conduct our review with a measure of discretion given to the trial judge's application of the legal standard to the facts." *State v. Fridleifson*, 2002 UT App 322,¶7, 57 P.3d 1098 (quotations and citations omitted).

¶3 The parties do not dispute that a level two detention occurred when the police retained Defendant's identification while they ran a warrants check; instead, they dispute whether the detention was legal. This court has noted that one level of "constitutionally permissible encounters between law enforcement officers and the public" is a level two detention, whereby "an officer may seize a person if the officer has an 'articulable suspicion' that the person has committed or is about to commit a crime; however, the 'detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop.' " *Salt Lake City v. Ray*, 2000 UT App 55,¶10, 998 P.2d 274 (quoting *State v. Deitman*, 739 P.2d 616, 617–18 (Utah 1987) (per curiam) (citations omitted)). Defendant argues that Deputy Spotten's level two detention was not based on an "articulable sus-

picion" that Defendant had "committed or [was] about to commit a crime." *Id.*

¶4 If a level two detention is not " 'supported by reasonable suspicion[, it] violates the Fourth Amendment to the United States Constitution.' " *Ray*, 2000 UT App 55 at ¶18, 998 P.2d 274 (quoting *State v. Bean*, 869 P.2d 984, 988 (Utah Ct.App.1994)). "In determining whether the officers had a reasonable articulable suspicion to justify Defendant's temporary detention, we 'look to the totality of the circumstances ... to determine if there was an objective basis for suspecting criminal activity.' " *State v. Beach*, 2002 UT App 160,¶8, 47 P.3d 932 (alteration in original) (quoting *State v. Humphrey*, 937 P.2d 137, 141 (Utah Ct.App.1997)). Further, when "considering the totality of the circumstances, we 'judge the officer's conduct in light of common sense and ordinary human experience ... and we accord deference to an officer's ability to distinguish between innocent and suspicious actions.' " *Id.* (alteration in original) (quoting *United States v. Williams*, 271 F.3d 1262, 1268 (10th Cir. 2001)).

¶5 Deputy Spotten testified that he and another officer responded to a call from dispatch at approximately 3:00 a.m. The dispatch stated that someone was heard screaming near the east side of the Bridgeside Landing apartment complex. When the officers arrived, Defendant was the only individual in the area, and he was walking down a dark street, carrying two over-the-shoulder cloth bags, toward what appeared to be a dead end. Deputy Spotten testified that he stopped Defendant and inquired whether Defendant had heard any screaming. Defendant responded he had not. When asked where he was going, Defendant said he was walking home. Deputy Spotten asked Defendant's name and destination, and then requested Defendant's identification. Deputy Spotten took Defendant's identification and ran a warrants check. Upon discovering Defendant had an outstanding warrant, Deputy Spotten arrested Defendant and conducted a search pursuant to the arrest.

¶6 When asked at the hearing what was suspicious about Defendant's behavior, Deputy Spotten responded that "the fact that [De-

fendant] was in the area, it's dark out there, it's a dead end area[,] ... and he's in the back of a complex where he does not live." Deputy Spotten did not testify to any objective or subjective connection he made between Defendant and the reported screaming. Nevertheless, based on this testimony, the trial court found "that Deputy Spotten had a reasonable articulable [suspicion] based on the following": the deputy received a report of a cry for help in the area where Defendant was, it was late and not well-lit, Defendant was headed down a dead-end road "where he could not get anywhere," Defendant "said he was going home to a location that he could not get to by traveling in the direction he was headed," and Defendant was carrying two bags.

¶ 7 Although we grant the trial court a measure of discretion in its application of the legal standard to the facts, *see State v. Fridleifson*, 2002 UT App 322, ¶ 7, 57 P.3d 1098, we disagree with its determination that Deputy Spotten had a reasonable articulable suspicion that Defendant was engaged in, or about to engage in, criminal activity. Deputy Spotten did not testify that he had any suspicions of criminal activity concerning Defendant. *See, e.g., State v. Chapman*, 921 P.2d 446, 453 (Utah 1996) ("By the officers' own testimony, no independent facts surrounding the encounter with [the defendant] created suspicion that he was involved in any illegal activity...."). In *Salt Lake City v. Ray*, 2000 UT App 55, ¶ 19, 998 P.2d 274, this court held that the officers did not have a reasonable suspicion "on which to justify the level two stop, and the seizure, therefore, violated" the defendant's Fourth Amendment rights. This court noted that "the facts known to the officers regarding [the defendant] were at least as consistent with lawful behavior as with the commission of a crime." *Id.* (footnotes omitted). Further, this court noted, "By [the officers'] own testimony, [they] had no knowledge of any violation of

the law that [the defendant] might have committed or was about to commit." *Id.*

¶ 8 In this case, as in *Ray*, the officers responded to a suspicious circumstances call, yet they did not observe, have knowledge of, or have suspicions about any crime that had been committed or was about to be committed, let alone any crime Defendant had committed or was about to commit. Although this case is distinct from *Ray*, based in part on the lateness of the hour and the recent report of screaming in the area, this court has held that a "decision to stop ... based merely on the lateness of the hour and the high-crime factor in the area," was insufficient to support a reasonable suspicion of criminal conduct. *State v. Trujillo*, 739 P.2d 85, 89 (Utah Ct.App.1987). In *Trujillo*, the officer observed a trio of men walking along State Street, in the dark, through what was considered a high-crime area. *See id.* The officer was suspicious about a knapsack one of the men was carrying, although he never inquired about it.[1] *See id.* Further, once the officer stopped the men, they appeared "nervous." *Id.* This court held that the officer "did not articulate reasonable objective facts for suspecting [the defendant] had engaged in or was about to engage in criminal conduct." *Id.* at 90.

¶ 9 Finally, the totality of circumstances in this case is insufficient to support "an objective basis for suspecting criminal activity." *State v. Beach*, 2002 UT App 160, ¶ 8, 47 P.3d 932 (quotations and citation omitted). Defendant was in the area of the "suspicious circumstances" dispatch, the area was dark, he was carrying two bags, and he was heading down what the officer thought was a dead-end road. Although " 'we accord deference to an officer's ability to distinguish between innocent and suspicious actions,' " *id.* (quoting *United States v. Williams*, 271 F.3d 1262, 1268 (10th Cir.2001)), these circumstances are not sufficient to establish reasonable suspicion.[2] Deputy Spotten did not ob-

---

1. In both *State v. Trujillo*, 739 P.2d 85, 89 (Utah Ct.App.1987), and this case, the officers were concerned about bags the respective defendants were carrying. However, in neither case did the officers inquire about the bags. Additionally, neither officer could "articulate what concerned him about" the bags in question. *Id.*

2. *Compare State v. Fridleifson*, 2002 UT App 322, ¶ 14, 57 P.3d 1098 (affirming lower court's finding of reasonable suspicion to investigate the defendant where the defendant was seen near drug house under surveillance, was told it was the site of illegal drug transactions and to leave, yet the defendant returned to the house, parked

serve Defendant engaged in illegal activity; he did not articulate any grounds for believing that Defendant was, or was about to be, engaged in criminal activity; and he did not make a connection between Defendant and the reported screaming.[3]

¶ 10 Based on the foregoing, we disagree with the trial court's determination that Deputy Spotten had a reasonable suspicion to support the level two detention of Defendant. Therefore, we reverse the trial court's denial of Defendant's motion to suppress and remand the case for further proceedings as may now be appropriate.

¶ 11 I CONCUR: JAMES Z. DAVIS, Judge.

BENCH, Associate Presiding Judge (dissenting):

¶ 12 I dissent. I believe that, at the time he took Defendant's identification, Deputy Spotten had reasonable suspicion to detain Defendant to investigate his possible involvement with a reported cry for help.

¶ 13 In the middle of the night, at about 3:00 a.m., the Salt Lake County Sheriff's Office received a report that a woman was screaming and crying out for help in an area just east of the Bridgeside Landing Apartments. Deputy Spotten and his partner were dispatched to the location and arrived within five minutes. To reach the location of the reported disturbance, Deputy Spotten turned onto a dead-end road that ran behind the apartments. At the end of the road was a six-foot fence, with a locked gate that led to a bike path.

¶ 14 When Deputy Spotten turned onto the road, he saw Defendant walking toward the locked gate, carrying two "over-the-shoulder" bags. Defendant was the only person the officers saw in the vicinity. The officers pulled up next to Defendant and exited their patrol car. Deputy Spotten told Defendant they had received a report that someone in the area had been screaming for help and asked Defendant if he had heard anything. Defendant replied that he had not. Deputy Spotten then asked Defendant where he was going. Defendant told the officers that he was walking home, but the route he was traveling was blocked off and the address he gave was nearly twenty blocks away.

¶ 15 Deputy Spotten asked Defendant for his name and some identification so he could run some "checks" on him. Deputy Spotten retained the identification and radioed dispatch, requesting a criminal history and warrants check. Less than five minutes later, dispatch notified Deputy Spotten of a warrant for Defendant's arrest. Deputy Spotten arrested Defendant on the warrant and, incident to that arrest, searched Defendant's person and the two bags he was carrying. Deputy Spotten found methamphetamine in the pocket of Defendant's jacket and crushed marijuana in one of the bags.

¶ 16 Under the totality of the circumstances, the objective facts known to Deputy Spotten at the time of the detention reasonably suggested "that criminal activity may be afoot." *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968). "Although each of the series of acts was 'perhaps innocent in itself,' . . . taken together, they 'warranted further investigation.' " *United States v. Arvizu*, 534 U.S. 266, 274, 122 S.Ct. 744, 751, 151 L.Ed.2d 740 (2002) (citation omitted).

in a less conspicuous spot, left his engine running, and ignored the officer's questioning upon leaving the house), *with State v. Sykes*, 840 P.2d 825, 828–29 (Utah Ct.App.1992) (holding police lacked reasonable suspicion to detain defendant based on her three minute presence in drug house under surveillance).

**3.** Further, case law indicates that where an officer *observes* behavior that is consistent with illegal activity, officers may have reasonable suspicion to investigate. *Compare State v. Beach*, 2002 UT App 160, ¶ 9, 47 P.3d 932 (holding that

where officer "observed specific behavior that reasonably led him to suspect that" the defendant was engaged in illegal activity, officer had reasonable suspicion); *with State v. Swanigan*, 699 P.2d 718, 719 (Utah 1985) (per curiam) (holding officer's stop of two individuals unconstitutional where stop was based on description by another officer, who merely saw individuals walking down street at 1:40 a.m., in area where recent burglary reported). In this case, however, Deputy Spotten did not observe Defendant engaged in behavior consistent with illegal activity.

¶ 17 According the trial court the proper "measure of discretion" to apply the law to the facts, *see State v. Pena*, 869 P.2d 932, 939 (Utah 1994), I would affirm the order denying Defendant's motion to suppress.